(77 N. W. Rep. 1015.)

----

EMMA G. TOWNE *vs.* ST. ANTHONY AND DAKOTA ELEVATOR COMPANY.

Opinion filed November 11, 1898.

**Elevators—Conversion of Stored Wheat—Demand.**

> Plaintiff and one M. entered into a contract whereby plaintiff sold and agreed to convey a tract of land to M., to be paid for in crops to be raised on the land by M. It was stipulated that one-half of such crops each year should be delivered by M. at some elevator at Erie, Cass county, in this state, and that elevator tickets should be taken for such moiety in the plaintiff's name. M. delivered all the grain raised on said land in the year 1895 to the defendant's elevator, situated at said Erie; but tickets for the whole of said grain were delivered to M., and in his name, and the plaintiff has never received any of said tickets or the proceeds of any part of said crop. Said contract of sale was never filed for record, and the defendant had no notice or knowledge of the terms of such contract at the time the

wheat was received and tickets delivered to M. therefor. Storage tickets were given for the wheat to M., as aforesaid, and the wheat, as soon as received, was mingled with other wheat of like kind; and subsequently, and before suit, the wheat was, in due course of the defendant's business, shipped out of the state by the defendant. Plaintiff sues for the conversion of the wheat, and introduced testimony as to its value at the date it was received in the elevator, but not at any later date. *Held,* first, that the defendant was an innocent bailee of the wheat, without notice; and that the acts of receiving the same and giving storage tickets to M. therefor, followed by mingling the grain with other grain, were all and singular lawful acts of the defendant, done in the usual course of its business; and that no action for conversion would lie for the same, in the absence of a demand for the grain brought before suit.

### Refusal to Surrender on Demand—Conversion.

Some two weeks after the delivery of the grain to defendant, and prior to bringing suit, plaintiff caused a proper demand for the wheat to be made of the defendant, and defendant refused to surrender the wheat. *Held,* that such demand and refusal operated as a conversion of the wheat, for which the action will lie.

### Proof of Value at Time of Demand.

*Held,* further, that, inasmuch as no evidence was offered of the value of the wheat at the time of the demand, the plaintiff cannot recover in this action.

### Judicial Notice—Presumption of Continuance.

*Held,* further, that this Court cannot judicially notice the value of grain at a given date, even where the evidence shows its value at a date two weeks prior to the date in question.

### Shipment of Wheat—When Evidence of Conversion.

Query, whether the mere shipment out of the state by the defendant of such wheat in due course of business was in itself an act of conversion.

Appeal from District Court, Cass County; *Pollock,* J.

Action by Emma G. Towne against the St. Anthony & Dakota Elevator Company. From a judgment for plaintiff, defendant appeals.

Reversed.

*Cochrane & Corliss,* for appellant.

Defendant did not convert the wheat by receiving and storing it with other grain of like kind and grade. By her contract with Murray plaintiff required him to deliver one half of the wheat in the elevator at Erie in her name. She must be regarded as having directed this to be done in the light of the known usages of warehousemen to mingle in a common bin wheat deposited with them for storage. *National Exc. Bank* v. *Wilder,* 34 Minn. 149-156. The failure of defendant to issue tickets in the name of plaintiff would not be the assertion of such dominion or control over the wheat as would constitute conversion. *Spooner* v. *Manchester,* 133 Mass. 270; *Laverthy* v. *Snethen,* 68 N. Y. 522; *Metcalf* v. *McLaughlin,* 122 Mass. 84; *Strickland* v. *Barrett,*

20 Pick. 415; *Sanford* v. *Elevator Co.*, 2 N. D. 6. The receipt of property by a bailee from a thief does not of itself constitute a conversion thereof. A demand by the real owner is necessary to put the bailee in default. *Brenshouse* v. *Abbott*, 45 N. J. Law 531; *Burditt* v. *Hunt*, 25 Me. 419; *Gurley* v. *Armstead*, 148 Mass. 267; *Valentine* v. *Duff*, 33 N. E. Rep. 529; *Bates* v. *Stanton*, 1 Duer, 79; *Rembaugh* v. *Phipps*, 75 Mo. 422; *Loring* v. *Mulcahey*, 3 Allen 575; *Nanson* v. *Jacob*, 6 S. W. Rep. 246, 249 and cases cited; *Smith* v. *Colby*, 67 Me. 169; *Waring* v. *R. R.*, 76 Pa. St. 491; *Leonard* v. *Tidd*, 3 Metc. 6. The bailee may safely return the goods to the thief after notice that a third party claims them, if this is done before a demand by such third person is made. *Rembaugh* v. *Phipps*, 75 Mo. 422; *Loring* v. *Mulcahey*, 3 Allen 575; *Gurley* v. *Armstead*, 148 Mass. 267; *Nanson* v. *Jacob*, 6 S. W. Rep. 246. The defendant having innocently dealt with one in the actual possession of the property cannot be held as for conversion without proof of a demand for the property and a refusal to deliver. *Plano Mfg. Co.* v. *N. P. Elev. Co.*, 53 N. W. Rep. 302; *Gillett* v. *Roberts*, 57 N. Y. 28; *Ely* v. *Ehle*, 3 N. Y. 506; *Barrett* v. *Warren*, 3 Hill 348; *Abernathy* v. *Wheeler*, 92 Ky. 320; *Parker* v. *Middleton*, 24 Conn. 207; *Hovey* v. *Bromley*, 33 N. Y. Supp. 400; *Valentine* v. *Duff*, 34 N. E. Rep. 453; *Salt Springs Nat. Bank* v. *Wheeler*, 48 N. Y. 492; *Sanford* v. *Duluth & Dakota Elev. Co.*, 2 N. D. 6-13; Biglow Lead. Cas. Torts, 446. There being no conversion at the time of the delivery of the grain, any conversion which took place must have taken place later. As a foundation for judgment for damages, therefore, plaintiff should have proved value at the time of the conversion. Sec. 5000, Rev. Codes. There is no evidence in the case on which the Court can base a finding as to the value of the property at the time of conversion, hence no foundation for judgment for damages. *Fargusson* v. *Talcott*, 7 N. D. 183, 73 N. W. Rep. 207. Under the statute which plaintiff had in view when ordering Murray to store her grain in an elevator and under the tickets actually issued, the transaction was a bailment and not a deposit for exchange. Plaintiff continued the owner of her proportionate part of the mass of grain of the same kind and grade, no matter how much grain, owned by the elevator company, was taken and shipped out of the state from that mass. § 1792 Rev. Codes; 28 Am. & Eng. Enc. L. 669. A bailee, when property is demanded by a third person, has a right to take reasonable time to investigate the title of such claimant. Note to 24 Am. St. Repts. 806. He may demand some evidence of title of the third person, or may require an agent to show his authority. *Taylor* v. *Spears*, 6 Ark. 381, 44 Am. Dec. 519; Note to *Bolling* v. *Kirby*, 24 Am. St.Repts. 807. Attaching an instrument to a pleading does not make it a part thereof unless it is an instrument for the payment of money only. § 5268 Rev. Codes; *Mayor* v. *Signoret*, 50 Cal. 298; *Buck* v. *Ficher*, 2 Colo. 185; *Brooks* v. *Paddock*, 6 Colo. 36; *Baker* v. *Berry*, 37 Mo. 307; *Kern* v. *Ins. Co.*, 40 Mo. 25; *Peake* v. *Bell*, 65 Mo. 224; *Pomeroy* v.

*Fullerton,* 133 Mo. 440; *Hartford Ins. Co.* v. *Kahn,* 34 Pac Rep. 895; *Jackson* v. *Ins. Co.,* 6 Pac. Rep. 731; *Watkins* v. *Brunt,* 53 Ind. 208; *Burkett* v. *Griffith,* 27 Pac. Rep. 527; *Aultman* v. *Seglenger,* 2 S. D. 446; *Rust Owen Co.* v. *Fitch,* 3 S. D. 217; *Wright* v. *Sherman,* 3 S. D. 290; *Excelsior D. Co.* v. *Brown,* 38 Ind. 384; *Lytle* v. *Lytle,* 37 Ind. 281; *Wyant* v. *Wyant,* 38 Ind. 48; *Campbell* v. *Cross,* 39 Ind. 155; *Hazzard* v. *Heacock,* 39 Ind. 172; *Trueblood* v. *Hallingsworth,* 48 Ind. 537; *Cario & Fulton R. Co.* v. *Parks,* 32 Ark. 131; *Gebhart* v. *Garnier,* 23 Am. Rep. 722; *Harlowe* v. *Boswell,* 15 Ill. 57; *State* v. *Helms,* 35 N. E. Rep. 894; *Larimore* v. *Wells,* 29 Ohio St. 13; *Taylor* v. *Blake,* 11 Minn. 255.

*Morrill & Engerud,* for respondent.

No question can be reviewed on appeal unless it is properly specified as an error. *Nichols & Shepard Co.* v. *Stangler,* 7 N. D. 102, 72 N. W. Rep. 1089; *Globe Inv. Co.* v. *Boyum,* 3 N. D. 538, 58 N. W. Rep. 339; *O'Brien* v. *Miller,* 4 N. D. 308; *Hostetter* v. *Brooks Elev. Co.,* 4 N. D. 161; *Schmitz* v. *Heger,* 5 N. D. 165. The trial court found as a fact that defendant took the grain and converted it. This finding is not excepted to nor attacked in the specifications of error, hence its correctness is deemed admitted. Ch. 5 Laws 1897, § 5467 Rev. Codes. The question of conversion is specified in the statement of the case as a question to be retried, but this is not a specification of error. Haynes New Trials & Appeals, § § 149, 150. The issuance of storage tickets to Murray, the disposition of part of the grain, and subsequently honoring the tickets issued therefore was a conversion. 26 A. & E. Enc. L. 733; 5 A. E. Enc. L. 528, § 2. Under such circumstances while a demand and refusal would be good evidence of conversion it is not necessary. *Myrick* v. *Bill,* 3 Dak. 284, 17 N. W. Rep 268; *Nichols* v. *Barnes,* 3 Dak. 148, 14 N. W. Rep. 110; *Rosum* v. *Hodges,* 1 S. D. 308, 47 N. W. Rep. 140; *Consolidated Land Co.* v. *Hawley,* 7 S. D. 229, 63 N. W. Rep. 904. Defendant is not an innocent bailee. *Best Brewing Co.* v. *Pillsbury,* 5 Dak. 62, 37 N. W. Rep. 763; 3 Am. & Eng. Enc. L. (2nd Ed.), 762 n. 3. Appellant cannot cannot secure a reversal for an error so trifling as the failure to prove value on the day of conversion, when a proper objection upon this ground at the trial would have enabled plaintiff to make good the proof. *Loverin-Browne Co.* v. *Bank,* 7 N. D. 569, 75 N. W. Rep. 923. Attaching the contract to the complaint as an exhibit, with proper allegations identifying and referring to it, is a proper method of pleading its contents. *Ward* v. *Clay,* 82 Cal. 502; *Lambert* v. *Haskell,* 80 Cal. 611; *San Diego Co. Bank* v. *Burns,* 104 Cal. 477. In Arkansas where the opposite rule prevails the appellate court will look to exhibits as a part of the pleading to sustain the lower court's rulings. *Buckner* v. *Davis,* 29 Ark. 444; *Holman* v. *Patterson,* 29 Ark. 357.

WALLIN, J. This is an action brought to recover damages for the alleged conversion of plaintiff's wheat, and was tried to the Court, under the provisions of chapter 5 of the Session Laws of 1897. The trial court filed its findings of fact and conclusions of law, and a statement of the case was settled, in which are embodied specifications of alleged errors of law, and likewise of particulars wherein appellant claims that the findings of fact are not supported by the evidence. Such specifications are, however, not required, under the act of 1897. *Farmers' & M. Nat. Bank* v. *Davis,* 8 N. D. 83, 76 N. W. Rep. 998. The rule of this Court requiring specifications was framed at a time when this Court sat only for the correction of errors, and prior to the statute of 1893, which so completely revolutionized the practice in cases tried below without a jury. This rule, it is true, was perpetuated in the amended rules of this Court, but the same is now in force and governs in jury cases only. Id. In this case, as will appear later, appellant has conformed to the requirements of the act of 1897, and specified in the statement certain questions of fact which it desires this Court to reinvestigate or retry.

Almost every fact which enters into the case is controverted but for the purposes of the decision we shall accept the respondent's version of the facts, except upon the decisive question of whether the defendant, when it received the wheat, had notice of the plaintiff's rights in the wheat, or sufficient notice thereof to put it upon its inquiry with respect thereto. For the purpose of the decision, the material facts will be epitomized as follows: In 1892 the plaintiff was the owner of a tract of land situated in Cass county, and at that date entered into a written contract with one Adam Murry to sell him the land on what is known as the "crop payment plan." By the terms of the contract, Murry was to have possession of the land, and was required to put it in crop each year until the land was paid for. The contract further stipulated as follows: "One-half of the grain to be sown and grown on said premises in each and every year hereafter, and during the continuance of this contract, beginning with the crop of the year 1893; said one-half of grain to be delivered in the elevator or on the cars at Erie, Cass county, North Dakota, or at some other convenient point not more remote, as said first party shall direct, within a reasonable time after threshing the same, and free of all expense or charge to the first party; said grain to be delivered in the name of the first party (the plaintiff), and to be by the first party promptly sold, and the proceeds thereof applied, first, in payment of interest on said sum at eight per cent. per annum, and, second, in reduction of said principal sum." Under this contract, Murry went into possession, and farmed the land until and including the year 1895. In that year Murry raised a crop of 1,048 bushels of No. 1 Northern wheat, and on the 16th and 17th days of September, 1895, delivered all of said wheat to the defendant's elevator at Erie, Cass county; and the defendant issued storage tickets in the usual form therefor, but

such tickets were issued to Murry in Murry's name, and the proceeds thereof were subsequently appropriated by Murry, and the plaintiff has never received any part of said wheat or its proceeds. On receiving the grain, the defendant mingled the same with other grain in its 'elevator of like kind and grade. Subsequently, but at what date does not clearly appear, defendant, in the usual course of its business, shipped the grain out of the state.

It is not claimed by the respondent that the act of receiving the wheat into its elevator or mingling the same with other grain in a general mass, constitutes a conversion of the grain by the defendant. No such claim would be tenable if made, because the contract provides in terms that Murry shall deliver one-half of the grain in the elevator at Erie, where the same was delivered. But respondent contends that the act of issuing storage tickets for the grain in the name of Murry, being in violation of the explicit terms of the contract, was an act inimical or adverse to the rights of the plaintiff, who owned the grain, and especially so as the contract provided that the title of all such grain should remain in the plaintiff until after the delivery of one-half thereof was made by Murry. The plaintiff must be regarded as having directed, or at least assented to, the mixing of her grain with other grain of like kind in the elevator, in view of the known usages of the warehousemen in this state who receive grain for storage. See *Bank* v. *Wilder,* 34 Minn. 149-156, 24 N. W. Rep. 699. We are disposed to accept the view of the respondent's counsel, and sustain their contention, as to the abstract legal proposition that the act of delivering the storage tickets and the whole thereof, to Murry and in his name, if done after notice of plaintiff's rights, was an act adverse to the rights of the plaintiff, and of such a prejudicial nature as would constitute a conversion of the property, for which an action would lie. The proposition is elementary. 26 Am. & Eng. Enc. Law, 714, and notes. But in the case at bar the contention of the appellant is that the defendant was without notice of plaintiff's rights in the wheat under the contract; and this contention is, in our judgment, the pivot upon which the decision of this case must turn.

It is conceded that the written contract was never filed in the office of the register of deeds, and hence that defendant did not have at any time constructive notice of the existence or terms of the contract. But plaintiff's contention is that the defendant had actual notice of the contract, or at least notice of facts sufficient to put defendant upon inquiry to ascertain the particular terms of the instrument. The testimony upon this question is within a limited compass. The defendant's agent, who received the wheat into the elevator, testified positively that, when he received the grain, he had no knowledge or notice whatever of plaintiff's rights or claims to the wheat; nor is there any evidence in the case that such agent had ever had any notice or knowledge of plaintiff's claims at any time until a date subsequent to the delivery of the wheat tickets, pursuant to the order of Adam Murry. One William H. Best

gave his deposition, and in plaintiff's behalf, and testified that he was the agent of the plaintiff, and represented her, in negotiating the sale of the land, and also acted for the plaintiff with respect to the crop of 1894, raised by Murry on the land, and during all the time in question was the sole agent of plaintiff with respect to her rights under the contract. This witness was asked: "You may state, if you know, what knowledge the defendant or its agent at Erie, at the elevator or warehouse at Erie, where Adam Murry delivered the wheat in question in 1895, had of the contract (Exhibit A), and of the rights of the plaintiff in question to the grain grown upon the premises in 1895, on or before the delivery of the grain so grown in 1895 to that elevator. A. I had had the same trouble with the same people over seed liens on this crop in 1894. Payment of the wheat was held by the company. I notified them of this contract, and of the claim, and also the agents at Erie. I had to put up a bond before they would pay me for the wheat tickets of the crop of 1894." It will be observed that the question of plaintiff's counsel is somewhat involved, and was framed ingeniously so, as to call for an answer as to the witness' knowledge of any notice brought home to the defendant or its agent at Erie of plaintiff's rights under the contract to the crop grown on the land in 1895. The answer of the witness, however, refers only to a transaction occurring the year previous, and one relating wholly to the crop of 1894. This answer embraces all the evidence in the record touching the subject of defendant's notice of plaintiff's rights in the crop of 1895, had or received by the defendant, until a date subsequent to issuing the storage tickets in question. The answer therefore is decisive upon the point of notice or want of notice. In the light of this testimony, it is proper to note that the controversy of 1894 did not arise between the plaintiff, on the one side, and Adam Murry, on the other. The plaintiff and the defendant were then at loggerheads, and the point of the dispute was the refusal of the defendant to cash plaintiff's wheat tickets, which tickets must then have been in the witness' possession, until a seed-lien claim was taken care of, nor were the tickets cashed until plaintiff "put up a bond." This bond, it seems, was required as indemnity to defendant against any loss on account of the seed lien. The matter of the seed lien being adjusted, the plaintiff's tickets were cashed, and the trouble over the 1894 crop was at an end. Such a controversy, from its nature, did not, in our opinion, call for any examination of the land contract for the purpose of considering the respective rights of the parties thereto, and especially so as to their rights in crops to be grown on the land in future years. So far as appears, the crops of future years were not mentioned in the controversy over the crop of 1894. The fair inference from the testimony is that defendant had received the crop of 1894 from Murry, and that neither Murry nor any one else then claimed any adverse interest in the crop represented by plaintiff's storage tickets, except the holder of the seed lien. Under these circum-

stances it is unreasonable to suppose that the defendant would enter into the matter of the respective rights of Adam Murry and the plaintiff to future crops grown on this land, as such rights are affected by the lengthy written contract defining such rights. The evidence lends no warrant for the inference that the contract itself, or a copy thereof, was ever delivered to the defendant's agents or officers, or read to any of them at any time. The witness says: "I notified them of this contract, and of this claim." The phrase "this claim" could refer only to the claim the witness was then pressing upon defendant's attention, viz: a claim to have the tickets for the 1894 crop cashed. That was the only claim the witness then had. The statement that he "notified them" in its very form excludes the idea that he showed the contract to the defendant's representatives, or read it to them. If the witness had done so, it is reasonable to infer that he would have so testified. His silence here, when it was to his interest to speak, is important, and to our mind significant. As we have seen, the occasion did not call for an examination of the contract itself, or of any scrutiny of its terms with reference to the respective rights of the parties thereto. Under such circumstances, it would suffice to satisfy the defendant's agents, as prudent business men, to be notified by the witness in a general way that plaintiff had a contract under which the particular tickets then involved—*i. e.* tickets for the crop of 1894—belonged to the plaintiff, whose agent then had the same in hand. To our mind it would be wholly unwarranted to hold that the defendant is chargeable with notice (arising from the transaction occurring in 1894) that the plaintiff would be the owner of one-half of any crop raised on the land by Adam Murry for an indefinite number of years in the then future. We see in the transaction of 1894 no fact reasonably calculated to awaken inquiry as to the disposition of any future crop to be raised by Murry upon the land. To our mind it is clear that no reference need have been made by the witness to the terms of the contract in question in order to meet the exigency of the transaction then being had between him and the defendant. At that time no one claimed the proceeds of the plaintiff's tickets, save only to satisfy a seed lien held by a stranger. Under such circumstances it seems but natural to suppose that only a general reference was made to the contract; and that, only, to explain the patent and undisputed fact that the plaintiff owned the tickets for the crop of 1894, and had a right, as such owner, to receive the proceeds thereof. We therefore hold that the defendant received the crop of 1895 lawfully, and without any notice or knowledge of the rights of this plaintiff thereto.

It is conceded that, as an innocent bailee receiving the wheat for storage, the defendant did not convert the wheat to its own use, nor in mingling the wheat with other grain, as it is usual to do in the course of its business, did the defendant do an unlawful act, for which an action in the nature of trover will lie. These acts, having been done in good faith, and with no notice of the plaintiff's

rights, do not in themselves constitute a conversion, or give rise
to a cause of action in favor of the plaintiff. It is true that the
wheat at all times was the property of plaintiff, and, being so,
the wrongful act of her agent in taking storage tickets in his own
name could not devest the plaintiff of her title to the wheat. But
it is elementary, in a case where a bailee takes possession inno-
cently, and without notice of the plaintiff's rights, that a demand
is an essential prerequisite to an action either for the property
in specie or its value. See *Sanford* v. *Elevator Co.*, 2 N. D. 6,
48 N. W. Rep. 434; *Plano Mfg. Co.* v. *Northern Pac. Elevator Co.*
(Minn.) 53 N. W. Rep. 202; *Gillett* v. *Roberts*, 57 N. Y. 28;
*Ely* v. *Ehle*, 3 N. Y. 506; *Abernathy* v. *Wheeler*, 92 Ky. 302,
17 S. W. Rep. 858; *Parker* v. *Middlebrook*, 24 Conn. 207. Under
the rule laid down in these cases, a demand before suit was indis-
pensable; but plaintiff's counsel contends that the record shows
that two separate demands of defendant for the wheat were made in
plaintiff's behalf before the action was instituted. Appellant's coun-
sel claim that the evidence fails to show a proper demand; but,
for the purposes of the decision, we will assume that the de-
mands were made and that they were properly made. The
first of these demands was made about the last day of Sept-
ember, 1895, and the last at some date not definitely shown,
but which was subsequent to the first demand. Under the
facts of this case, the refusal to deliver the wheat to the plaintiff
upon her proper demand therefor was prejudicial and wrongful,
and operated as a conversion of the wheat, and would therefore
entitle the plaintiff to recover the value of the grain on the date
of such demand and refusal, with interest. Rev. Codes, § 5000.
But this record is devoid of evidence of the value of the wheat
in controversy at any time other than on the 16th and 17th days
of September, 1895, at which time the price of the wheat was 41
cents per bushel, as shown by the testimony. There being no
evidence in the case as to the price of the wheat at the date of
the demands, or either of them, the Court is not in a position to
direct the entry of judgment for the value of the wheat when the
same was converted to the use of the defendant. It is obvious
that this Court cannot take judicial notice of the market price of
wheat at any particular date, and especially so at a date more than
three years prior to the retrial of the case in this Court. Nor
does evidence of the price in the middle of September, 1895, suffice
to inform this Court of the price at the end of said month of
September.

Respondent contends, further, that the evidence discloses that
the defendant shipped the wheat out of the state at a date prior
to the institution of this action, and that this was done in hostility
to the plaintiff's rights, and hence will operate as a conversion with-
out demand. Whether, under the facts of this case, the shipment
of the wheat out of the state, in ignorance of the plaintiff's rights,
would operate as a conversion, is a point of some difficulty perhaps;

but the question need not be disposed of now, because the date of the shipment cannot be definitely ascertained from the evidence, and, .if it could be, there would be a total absence of testimony showing the value of the wheat at the date of such shipment, or at any date subsequent to the shipment. There being no evidence of the value of the wheat at the time of the demand therefor, or when it was shipped out of the state, the plaintiff cannot recover. The apparent hardship of depriving the plaintiff of the value of her wheat is somewhat mitigated by the fact that it was largely by reason of her own fault that the defendant innocently received the wheat. from another party, and paid for the same. The District Court is directed to reverse its judgment, and enter a judgment dismissing the action. All the judges concurring.

### . ON APPLICATION FOR REHEARING.

The petition for a rehearing in this case will be denied. We think a new trial would not be in furtherance of justice. The ground upon which a new trial is asked would be wholly insufficient if the action had been tried to a jury, and a motion for a new trial had been addressed to the District Court. The only ground for a new trial urged is that at the trial before the District Court the defendant omitted to offer evidence of the value of the grain at the time of its conversion by the defendant. But a mere failure to put in evidence furnishes no ground for a new trial. This is elementary. It is true that chapter 5 of the Laws of 1897 permits this Court, in cases tried here anew, to grant a new trial in exceptional cases, and where a new trial is absolutely necessary to the accomplishment of justice. This feature of the statute is novel, and precedents are therefore not available to enlighten' this Court as to a proper exercise of the discretion conferred by the statute. But, in actions at law coming here to be tried anew, it will, in our opinion, be a safe general rule—subject to possible exceptions—to be controlled by the authorities and well-established principles of law which govern the granting of new trials in actions tried to a jury. Guided by such authorities and principles of law, the plaintiff is not entitled to a new trial of this action, for the reason already given.

But, in our opinion, a new trial should be denied for reasons other than technical. It appears that the defendant, in receiving the wheat into its warehouse and issuing storage tickets therefor, acted innocently, and with no notice, actual or constructive, of plaintiff's ownership of the grain. In fact, the plaintiff in effect directed Adam Murry to store the wheat in defendant's warehouse. In due course of business, the defendant, after becoming responsible for the wheat to the holders of the storage tickets, shipped the same out of the state. The defendant, under these circumstances, became responsible for the wheat, and could be compelled to deliver the same to the holders of the storage tickets therefor. Doubtless such wheat had been delivered at a date long prior to the commencement of this

action. If, after such delivery of the wheat, the plaintiff should recover for its value, the obvious practical result will be to impose upon the defendant a double liability. This, certainly, would work a hardship, which should be avoided, if possible without a violation of settled principles of law. As we have already shown, the plaintiff has had her day in court, and an opportunity to recover at law, and has failed, and that she is now unable to advance any legal reason for a new trial.

Finally, a denial of a new trial does not leave the plaintiff remediless. She has in reserve her original right of action against Adam Murry, by whose wrongful act the plaintiff was deprived of the storage tickets for her share of the grain. Murry converted the storage tickets, and thereby incurred a legal liability to plaintiff for their value. Under these circumstances, we are clear that a new trial would not aid in the accomplishment of justice.