KNUTE SAND, Respondent, v. THE ST. ANTHONY & DAKOTA ELEVATOR COMPANY, a Corporation, Appellant.

(191 N. W. 955.)

**Chattel mortgages — refusal of elevator to deliver stored grain upon demand of mortgagee prima facie evidence of conversion.**

1. The plaintiff held a chattel mortgage, given by one Elayer, upon certain grain. The mortgage had been duly filed in the office of the register of deeds of the proper county. The note secured by the mortgage was payable October 1st, 1920. On or about October 2d, 1920, Elayer delivered the grain to the defendant elevator company, who received it in storage, and thereafter on October 4th, 1920, issued storage tickets to Elayer and in his name for all of said grain. On that same date the elevator company received actual notice of plaintiff's mortgage. On January 29, 1921, plaintiff made formal demand upon the defendant for the delivery of the grain or the proceeds thereof. The demand was refused. On May 13, 1921, one Anderson brought action against Elayer and garnished the defendant elevator company. On June 18, 1921, plaintiff brought this action for conversion of the grain. On July 29th, 1921, the elevator company interposed an answer in the garnishment action and attached thereto duplicates of the storage tickets issued to Elayer and served notice upon the plaintiff in such garnishment action and upon the plaintiff in this action that such duplicate storage tickets had been deposited, in the office of the clerk of the district court where such actions were pending, as provided by § 7594, Comp. Laws 1913. It is *held*,

---

Note.—On refusal of bailee to surrender property to owner as conversion, see 3 R. C. L. 131; 1 R. C. L. Supp. 773; 5 R. C. L. Supp. 158.

That the refusal of the defendant elevator company to comply with plaintiff's demand *prima facie* established a conversion.

**Interpleader — elevator company refusing to deliver upon demand stored grain held not entitled to deposit money in court and avoid liability.**

2. That the defendant has not brought itself within the provisions of § 7594, Comp. Laws 1913, permitting a bailee to make deposit in court when adverse claims are made to moneys or property in his custody, so as to be relieved from liability for the conversion so established.

Opinion filed December 16, 1922.   Rehearing denied January 16, 1923.  ·

Bailments, 6 C. J. § 113 p. 1151 n. 60.   Chattel Mortgages, 11 C. J. § 287 p. 592 n. 76 New.   Interpleader, 33 C. J. § 25 p. 445 n. 96.

From a judgment of the District Court of Pierce County, *Burr, J.,* defendant appeals.

Modified and affirmed.

*Harold B. Nelson,* for respondent.

"If the warehouseman is informed the goods are not the property of the principal, a delivery to the principal would be a conversion for which the true owner could hold the warehouseman bailee in trover." Crosswell v. Lehman, 54 Ala. 363, 25 Am. Rep. 684; Clegg v. Boston Storage Warehouse Co. 149 Mass. 454, 14 Am. St. Rep. 436.

To the same effect is the case of Cornell v. Mahoney, 76 N. E. 664, where the court sustained the defense that the bailee had delivered the property to an officer with process, even though a portion of the property so delivered was exempted.   See also Mullins v. Chickering, 18 N. E. 377, 1 L.R.A. 463.

The delivery of goods by a warehouseman to the depositor after receiving notice of the adverse claim or title of a third person renders the warehousemen liable for conversion if such claim or title is good.   40 Cyc. 448, and cases cited in note 98, including Willard v. Monarch Elevator Co. 10 N. D. 400, 87 N. W. 996; Hudmon v. DuBose, 85 Ala. 446, 2 L.R.A. 475; Phillip Best Brewing Co. v. Pillsbury, etc. Elevator Co. 37 N. W. 763; Nichols v. Barnes, 14 N. W. 110.

CHRISTIANSON, J.   Plaintiff brought this action to recover the value of certain wheat, rye, oats, and flax alleged to have been converted by the defendant, and upon which the plaintiff had a chattel mortgage. The material facts are not in dispute.   They are as follows:   The grain in controversy was grown by one Elayer in 1920.   The plaintiff, Sand,

had a mortgage thereon executed by Elayer to secure a promissory note in the sum of $562 dated October 14th, 1919 and payable October 1st, 1920. When the grain was threshed, and on or about October 2nd, 1920, Elayer delivered a certain quantity of wheat, oats, rye, and flax to the defendant elevator company. On October 4, 1920, the elevator company issued storage tickets, for the grain in the form as prescribed by our statute, reciting that it had received grain described in the tickets from E. W. Elayer for storage. There is no dispute as to the quantity of grain so delivered to the elevator company and for which the storage tickets were issued, nor is there any dispute as to such grain being covered by plaintiff's mortgage. On October 4th, 1920, the plaintiff, Sand, served written notice upon the defendant elevator company that he held a chattel mortgage upon such grain. On January 19, 1921, the plaintiff, Sand, caused notice of chattel mortgage foreclosure sale to be published, which notice recited that the chattel mortgage would be foreclosed by a sale of the mortgaged property on January 29, 1921, at the St. Anthony and Dakota Elevator at Fero, North Dakota. Upon the trial of this action it was stipulated that at the time such foreclosure was advertised to be held, namely, on January 29th, 1921, plaintiff's agent, advertised to conduct such sale, appeared at the elevator of the defendant elevator company where the grain was stored and demanded the delivery of such grain or the proceeds thereof and that such demand was refused. On May 13, 1921, one Anderson instituted an action against said Elayer as defendant and also instituted a garnishment proceeding ancillary thereto wherein the defendant elevator company was made a garnishee. While the record does not establish the fact it is stated in the briefs of both plaintiff and defendant that Sand was interpleaded in said garnishment action. On June 18, 1921, the plaintiff instituted this action against the defendant. On July 29, 1921, the defendant elevator company served its answer in the garnishment action instituted by Anderson and attached thereto duplicates of the storage tickets issued to Elayer. In such answer it was stated that shortly after the grain described in the various storage tickets was placed in the custody of the defendant elevator company, the following parties made claims thereto: One Blessum, who claimed a thresher's lien thereon, one Sand, the plaintiff in this action, who claimed a chattel mortgage thereon, and one Anderson, the plaintiff in said garnishment action,

who claimed a right to have the grain sold and applied in payment of certain indebtedness owing to him by Elayer; that the defendant was unable to ascertain the respective rights of the parties; that it merely held the grain as bailee, and had no interest in the same except for its own protection. The answer further recited that the said Sand had instituted this action, and stated that the defendant made a deposit of all of the duplicate storage tickets described in the affidavit. Attached to said affidavit is a notice addressed to Anderson, plaintiff in said garnishment action, to Sand, plaintiff in this action, and their respective attorneys, and to said Blessum, the owner of the thresher's lien. The notice recites that the elevator company has deposited in the office of the clerk of the district court where said actions are both pending, "duplicates of all of the storage tickets representing all of the grain involved in each and both of said actions, and to which adverse claims are made, and that such deposit is made under § 7594, Comp. Laws, 1913." The trial court rendered judgment in favor of the plaintiff for the amount demanded and the defendant has appealed.

(1) Upon the record before us it stands undisputed that plaintiff's chattel mortgage constituted a valid first lien upon the grain in controversy. Under the express stipulations of the mortgage, the mortgagee was authorized, in case default was made in the payment of the debt secured by the mortgage, to take, remove, and sell the property described in the mortgage in the manner provided by statute. The mortgage further provided that it might "be foreclosed by a sale of such crop, when harvested, in any usual market thereof at any time in the usual manner, at the market price therefor in any such market without notice of foreclosure." At the time the grain was delivered to the defendant elevator company by the mortgagor, Elayer, a default existed and the plaintiff, Sand, was entitled to possession of the grain covered by the mortgage, upon making a demand therefor. Of course, the chattel mortgage was only a lien and defendant could receive the grain for storage or even purchase it, but the grain would be received and held subject to the lien of plaintiff's mortgage. Sanford v. Duluth & D. Elevator Co. 2 N. D. 6, 48 N. W. 434; Catlett v. Stokes, 21 S. D. 108, 110 N. W. 84; Citizens Nat. Bank v. Osborne-McMillan Elevator Co. 21 N. D. 335, 339, 131 N. W. 266. In this case it is stipulated that the agent of the plaintiff on January 29, 1921, demanded possession of the grain, and

that this demand was refused. Proof of such demand and refusal *prima facie* established a conversion. Towne v. St. Anthony & D. Elevator Co. 8 N. D. 200, 77 N. W. 608; Marshall v. Andrews, 8 N. D. 364, 79 N. W. 851; 38 Cyc. 2031. It is true that such demand and refusal merely constitutes prima facie evidence of conversion and the defendant might have offered evidence tending to rebut or explain the refusal. No such evidence, however was offered. So far as the record here shows there was an absolute refusal. For aught that appears, the refusal might have been based upon the ground that the defendant had issued storage tickets to Elayer and would deliver the grain only to the holder of the storage tickets. The record does not even show affirmatively when the different adverse claims were made. No witnesses were examined upon the trial, but all the evidence was stipulated. Defendant's counsel dictated into the record the following stipulation: "It is further stipulated that some time after the grain hereinbefore described and involved in this litigation was deposited at the defendant elevator at Fero, North Dakota, various persons made claim to the same and that their claims were adverse one to the other; that from an investigation by Mr. Grimsgard, superintendent of the defendant elevator company for said district, as to the nature and validity of said claims it was impossible for him or said defendant elevator company to determine as to which claimant or claimants were entitled to said grain or any part of the same and that thereafter on July 29, 1921," duplicate storage tickets representing the grain were deposited with the clerk of the district court of Pierce county, etc. It will be noted that his stipulation does not state at what time the various claims were presented. The record does show that defendant was actually notified of plaintiff's claim on the fourth day of October, 1920, —the same day the storage tickets were issued. Under this state of facts we believe that the evidence established a conversion by the elevator company. The rule seems well settled that the refusal of the bailee to surrender property held by it to one rightfully entitled thereto constitutes a conversion. See 16 C. J. 1151; 3 R. C. L. p. 131; Towne v. St. Anthony & D. Elevator Co, and Marshall v. Andrews, supra. The defendant, however, contends that inasmuch as it deposited the duplicate storage tickets, it is relieved from liability under § 7594, Comp. Laws 1913. That section reads as follows: "Whenever two or more persons make claim for the whole or any part of the same money, personal prop-

erty or effects in the possession or control of any other person as bailee
or otherwise and the right of any such claimant is adverse to the right
of any other claimant, or is disputed or doubtful, and the bailee, custo-
dian, or person in control of any part of such property, money, or effects
is unable to determine to whom the same rightfully belongs, or who
is rightfully entitled to the possession thereof, or whenever such bailee,
custodian, or person in control has notice or knowledge of any right or
claim of right of any person in or to any part of such property, money,
or effects adverse to the right of any other claimant therefor; or, when-
ever any debt, money, property, or effects owing by or in the possession
or under the control of any person may be attached by garnishment or
other process, and there is any dispute as to who is entitled to the same
or any part thereof, in any such case the person in the possession or con-
trol of any such property, money, or effects, when an action in any form
has been commenced for an account of or growing out of the same or in
which the same has been attached as aforesaid, may pay such money
or deliver such property or effects to the clerk of the court in which any
such action having reference to said money, property, or effects, or the
value thereof, may be pending, or out of which any garnishment or
other process may issue with reference thereto; or if no such suit is com-
menced, he may apply to the district court of the district where such
property, money, or effects may be situated, and upon showing to the
satisfaction of the court the existence of facts bringing him within the
operation of this section, said court shall make an order designating a
depositary with whom said property, money, or effects may be deposited
by the applicant for such order. In either case such person in the pos-
session or control of such property, money, or effects shall at once notify
personally or by registered mail all persons of whose claims he may have
notice or knowledge, having or claiming any interest, property, lien, or
right in, to or upon such property, money, or effects, of such deposit; and
upon giving such notice the person so depositing the same shall there-
upon be relieved from further liability to any person on account of such
property, money, or effects, provided, that such depositor may be
required upon the application of any party interested therein to appear
and make disclosure before the court. in which any such action may be
pending or by which any order designating a depositor may be made,
concerning the said property, money, debts, or effects held, controlled

or owned by him. If the address of any persons having or making any claim as aforesaid cannot be ascertained, an affidavit to that effect shall be filed with the depositary, and the giving of such notice shall not be required in such case." This statute was enacted to enable a bailee to be relieved from the embarrassing situation in which he found himself when various parties made conflicting claims to moneys, or property in his custody. See 3 R. C. L. § 54, pp. 132, 133. When conflicting claims are made to moneys or property in his custody, or when it comes to his knowledge or notice that any person has or claims a right thereto adverse to the bailor, or whenever the money or property is attached by garnishment or other process the statute offers the bailee a remedy by which he may be relieved from liability. If any of these conditions exist and an action has been commenced in any form involving or having reference to the money or property, he may deposit it with the clerk of the district court where the action is pending. If the conditions prescribed by statute exist and no suit is commenced, the bailee may nevertheless be relieved by making application "to the district court of the district where such property, money or effects may be situated." And "upon showing to the satisfaction of the court existence of facts bringing him within operation of the section" the court is required to "make an order designating a depositary with whom such property, money or effects may be deposited by the applicant for such order."

In our opinion the defendant in this case has not brought himself within the statute. The grain in controversy was delivered to the defendant prior to October 4th, 1920. When it received this grain it had constructive notice that it was covered by plaintiff's mortgage and on October 4th, 1920, it received actual notice of this fact. On January 29, 1921, the plaintiff made formal demand upon the defendant for the possession of the grain. Defendant refused such demand. As already stated, such demand and refusal established *prima facie* a conversion of the grain on that date. Defendant took no action under § 7594, supra, until after this action had been brought, and it had been made garnishee in an action brought by one Anderson. Then in July 1921, it sought to invoke § 7594 by answer made in the garnishment action. In our opinion the findings of the trial court to the effect that the defendant converted the grain is in accord with the facts and evidence as stipulated upon the trial in this action.

The plaintiff offered evidence showing the market price of the grain at Fero, North Dakota, on January 29, 1921. The judgment appealed from is based upon the market value so established. This is the proper measure of damages. Comp. Laws, 1913, § 7168; Towne v. St. Anthony & D. Elevator Co. 8 N. D. 200, 208, 77 N. W. 608; Citizens Nat. Bank v. Osborne-McMillan Elevator Co. 21 N. D. 335, 131 N. W. 266; 38 Cyc. 2094. The trial court, however, awarded judgment for the costs and expenses of the foreclosure sale. In our opinion the plaintiff was not entitled to this allowance. It is undisputed that the plaintiff at no time had possession of the grain or the storage tickets representing it, and we do not believe that the expenses incident to the attempted foreclosure sale are properly allowable, either as an element of damages or as disbursements in this action. Hence the judgment will be modified by eliminating this item, and, as so modified, it is affirmed.

GRACE and ROBINSON, JJ., concur.

BIRDZELL, Ch. J. (specially concurring). I concur in the opinion of the court written by Judge Christianson. To me it seems obvious that the statute under consideration was never intended to apply, and does not by its terms apply, to a situation in which the plaintiff claims that the defendant, a bailee, is liable to him on account of a conversion of the subject of the bailment. The statute was construed by this court in McLaughlin v. Dodge Elevator Co. 43 N. D. 231, 174 N. W. 871, as not applicable to the instance of a wrongdoer who would seek to use it for the purpose of reducing his own liability for a wrongful act, such as a conversion. It was there said that:

"The statute is merely intended to relieve a person who is in a position analogous to that of a stakeholder. He is relieved by delivering up the stakes."

The similar statute in Minnesota was construed in the same way by the Minnesota court in Austin v. March, 86 Minn. 232, 235, 90 N. W. 384, where the court said:

"The design and intention of the legislature was to give in simplified form the relief granted by courts of equity at common law by the proceeding known as an interpleader, and the rules and principles of law

applicable to that proceeding must govern and control proceedings under the statute.

"The authorities are uniform that to entitle a party to maintain a bill of interpleader it must appear that he stands in a position of indifference between the rival claimants, making no claim to the property himself."

Obviously, one who is guilty of conversion cannot stand in the position of a stakeholder for he is charged with having asserted a dominion over the property inconsistent with the plaintiff's right, and it will be incumbent upon the plaintiff to establish that fact in order to recover in conversion. In other words, the plaintiff will recover only if he is able to prove that the defendant assumed a different attitude towards the property than that of a stakeholder.

No principle is better settled than that a wrongdoer may not invoke the remedy of interpleader. 15 R. C. L. pages 226 and 227, states the general doctrine as follows:

"It is of the essence of an interpleader suit that the plaintiff should be entirely indifferent between the conflicting claims, asserting no interest in himself in the fund in dispute. An attitude of perfect disinterestedness, excluding even an indirect interest, on the part of the plaintiff is indispensable to the maintenance of the bill, and his position must be one of 'continuous impartiality,' save that the thing in his possession be awarded to the right party. . . . So a bill of interpleader will not lie if the plaintiff has incurred some personal obligation to either of the defendants, independent of the title or the right to possession, because such defendant would in that event have a claim against him which could not be settled in litigation with the other defendant. A plaintiff cannot compel others to interplead when the relative rights of the latter depend upon the question of fact whether he has made himself legally liable to pay one of them, even though the plaintiff will not be pecuniarily affected by the decision of that question. He must be supposed to know whether he has obligated himself to one of the other parties and cannot cast upon them the burden of settling that question.

"One seeking the advantages of a bill of interpleader must show not only that he stands indifferent between the claimants and that he is without interest in the controversy to be waged between them, but that

he is in the position of a mere innocent stakeholder or depositary, and that no act on his part has caused the embarrassment of conflicting claims and the peril of double vexation. *When he stands to either of the parties in the relation of a wrongdoer he cannot have relief by bill of interpleader.* Thus, where a warehouseman, as agent, sells the property of his bailor stored with him to a purchaser who leaves the property in the warehouse, he is not entitled to file a bill of interpleader to prevent suits brought against him by the original bailor who denies the agency, and by the purchaser, both of whom claim title to the property. So, if a sheriff has seized goods on execution that were not subject to levy, he is as to the true owner a wrongdoer and cannot require him to interplead with the creditor to determine the validity of the levy." See also Tyus v. Rust, 37 Ga. 574, 95 Am. Dec. 365.

In the dissenting opinion herein, it is said that the statute may be invoked by one who has converted property. The statement is also made that it is apparent that the defendant is in the position of a mere stakeholder. This, it seems to me, involves a fundamental inconsistency. How can it be said that one is a mere stakeholder, or one claiming no right to the property, when the very basis of the liability for conversion, which is sought to be enforced against him, is that he has asserted a dominion inconsistent with the plaintiff's right, interest or title?

I am of the opinion that the statute evidences no intention whatsoever to change the fundamental principles applicable to interpleader, but that it merely intends to simplify the application of those principles by allowing a stakeholder to exonerate himself, either in advance of litigation begun, or after litigation has started, concerning which he is indifferent and uninterested as to the outcome,—adverse claims being asserted by others to property of which he is stakeholder. I am unable to see how he can occupy this position when an action is begun against him which is predicated on his own wrongful act.

Concerning the suggestion that the statute was intended to operate so as to shift the burden of market risks in shuttle-cock fashion between the injured party and the wrongdoer, and to balance differences on the basis of market changes during periods anterior and subsequent to the service of notice under the statute, I am impressed only by its novelty. It has never been considered a hardship on one who has converted property to hold him for the value of the interest converted. This is

merely taking him at his word. If he would deprive another of his property or an interest therein and claim it for his own, why should he not pay its value to the rightful owner? And by what right can he say to the injured party: "I repent, I am sick of my own deal, I have carried the risk as long as I wish, *you must* carry it henceforth?" Surely not by any right conferred by § 7594!

I concur in the majority opinion.

BRONSON, J. (dissenting). Elayer made to plaintiff a note for $562 dated October 14th, 1919, and due October 1st, 1920. To secure the same, Elayer executed a chattel mortgage upon the crops to be grown in 1920 on a half section of land owned by him. This mortgage was recorded in October, 1919. Elayer's share of the crops in 1920 was delivered to defendant at its elevator in Fero, North Dakota. The same consisted of wheat, oats, rye, and flax. On October 4th, 1920, defendant issued seven storage tickets in the name of Elayer to this grain. On this date plaintiff, by letter, notified defendant that he held a chattel mortgage upon the owner's share of the crops grown during 1920 on the premises affected. On January 19th, 1921, plaintiff, through the sheriff as his agent, issued a notice of foreclosure concerning his chattel mortgage upon the crops. Notice was therein given that plaintiff would sell such crops at defendant's elevator at Fero at 2 P. M. on January 29th, 1921. The affidavit for publication of this notice recites such notice was published once, viz.: January 20th, 1920. On January 29th, 1921, plaintiff, through his agent, offered and attempted to sell such amount of the grain covered by the mortgage and deposited with defendant as was necessary to satisfy plaintiff's claims and costs. Upon such foreclosure, defendant failed, refused, and neglected to deliver to plaintiff the grain covered by the mortgage, or the proceeds thereof, or any part thereof, and on such day the same was demanded by plaintiff's agent, the sheriff. Prior to such attempted foreclosure, no demand had been made for the possession of the grain by the mortgagee. On May 13th, 1921, one Anderson instituted an action against Elayer and a garnishment proceeding against defendant herein as garnishee in such action. Plaintiff herein was interpleaded as a defendant in such action. On June 18th, 1921, plaintiff instituted this action for conversion against defendant. Shortly after the grain in controversy

was placed in defendant's custody various and adverse claims were made to the same or to different parts thereof under claims, liens, and mortgages: One Obert Blessum of Rugby, North Dakota, claimed a thresher's lien upon the same in a large amount; plaintiff claimed a lien under his chattel mortgage; Anderson, who sued Elayer, made a claim of right to have the grain sold and applied to Elayer's indebtedness to him.

On July 26th, 1921, defendant herein served upon plaintiff its answer wherein it alleges that since the delivery of grain to its elevator and while the storage tickets were outstanding in Elayer's name, diverse and different persons have made claim to the grain, to some interests therein, or to the proceeds thereof, namely, the plaintiff, one Archie Anderson, Elayer, and Obert Blessum; that defendant, as bailee, has no interests other than to protect itself against loss of damage and see to it, as far as possible, that the person entitled to receive such grain or its proceeds obtain the same; that this defendant has been and is wholly unable to determine who is entitled to such grain or to any part thereof, or to the proceeds thereof; that because of such adverse claims and because of defendant's inability to determine as to whom said grain or proceeds should be delivered, it caused to be deposited the duplicate storage tickets representing such grain in the office of the clerk of the district court; that defendant makes no personal claim of any kind in the action other than to protect itself against loss or damage and to have determined the party or parties who are rightfully entitled to receive such grain or the proceeds thereof.

. Pursuant to such allegations all the facts above stated, as well as the facts contained in such allegations of the answer, were stipulated at the trial. It was stipulated that notice of such deposit was duly given and served upon all of the known claimants as by law provided and that the grain and storage tickets representing same were still on file in the trial court. On July 29th, 1921, the defendant, as garnishee, in the action of Anderson v. Elayer made affidavit, reciting principally the facts above stated concerning the receipt and storage of the grain and the claims of adverse claimants and the deposits in court made by the defendant.

The trial court found, in addition to general findings upon the stipulated facts above stated, that plaintiff in the Anderson action in which

49 N. D.—33.

he was interpleaded necessarily expended, in protection of his interest, $9.30 sheriff's fees; $2.10 witness fees. That plaintiff necessarily incurred in making the foreclosure $3 printer's fees; $16.50 agent's fees, together with $44.50 foreclosure costs and $11.40 (above mentioned). That defendant has never paid to anyone the value of the grain and has refused at all times to deliver the same, or any part thereof, to plaintiff, that on July 29th, 1921, defendant attempted to deposit the grain with the clerk of the court and for that purpose executed duplicate storage tickets representing the grain received from Elayer and gave notice to parties interested of its intention to deposit the grain by a deposit of such duplicate storage tickets. The trial court made conclusions of law that plaintiff was entitled to recover $679.05 with interest thereon at 6 per cent since January 29th, 1921, together with $11.40, making a total amount of $739.34. That defendant on January 29th, 1921, converted the grain; that its value on such date was far in excess of amount due plaintiff; that, as to defendant, plaintiff made a valid foreclosure; that the chattel mortgage was a first lien upon the grain; that no proper deposit was made and as to plaintiff was void; that the debt due plaintiff is the same debt alleged by plaintiff in the Anderson action and that upon payment of the judgment herein, defendant will be entitled to be subrogated to plaintiff's rights to extent of amount due on January 29th, 1921, viz.: $679.08; that plaintiff was entitled to his costs and disbursements herein. Judgment was so entered, including $21.90 costs and disbursements herein.

## Opinion.

It is apparent that the attempted foreclosure proceedings were invalid; the date of publication proved was January 20th, 1920; evidently intended for January 20th, 1921. But such proof afforded no authority for a valid foreclosure sale on January 29th, 1921. Comp. Laws, 1913, § 8125. Plaintiff elected to proceed by notice, and not without notice, under § 8127, Comp. Laws, 1913. This is technical but plaintiff seeks the enforcement of technical rights to make defendant pay his demand with costs of foreclosure and other expenses. Accordingly, the findings and conclusions of the trial court are at least erroneous in holding the foreclosure valid for any purposes herein and in permitting plaintiff to

recover the costs of such attempted foreclosure. Upon what theory the trial court allowed plaintiff to recover against the defendant in this action, his costs incurred in another action (the Anderson action), the record does not disclose; in fact, the record does not disclose what proceedings were taken in the Anderson action or how the plaintiff herein happened to be therein interpleaded. Again, the trial court erroneously allowed this item of costs.

The majority opinion of this court is based upon three general propositions: (1) That proof of the demand and refusal on January 29th, 1921, established a conversion for the reason that no evidence was offered to rebut or explain the refusal; (2) That the proper measure of damages was the market price of the grain on January 29th, 1921, and that the judgment is based upon such market value so established; (3) That no proper deposit was made because defendant has not brought itself within the statute, § 7594, Comp. Laws, 1913.

(1) It is true the record is abbreviated and the facts in some respects neither definite nor clear; practically all of the facts are established by stipulation but with such stipulation were introduced certain exhibits. One of such exhibits, together with the stipulation, contains the evidence that, shortly after the grain was received by defendant, adverse claims were made to the grain. Obert Blessum claimed the thresher's lien. Plaintiff claimed a lien; Anderson made a claim of right. What happened between the time these claims were made and the time of the demand on January 29th, 1921, the record fails to disclose. What reasons actuated the defendant in not complying with the demand on January 29th, 1921, also do not appear. However, when plaintiff made the demand upon defendant on January 29th, 1921, for purposes of foreclosure, he knew that defendant was not a wrongdoer in receiving the wheat and issuing a storage ticket therefor. Sanford v. Duluth & D. Elevator Co. 2 N. D. 6, 48 N. W. 434. He knew further that defendant was merely holding such grain as a bailee for the proper persons entitled thereto and that it claimed no rights of ownership therein; that the reception of the grain constituted a bailment and not a sale. § 3114; State ex rel. Ertelt v. Daniels, 35 N. D. 5, 9, 159 N. W. 17. I am not prepared to hold, directly or inferentially, that the defendant, as such bailee, was then bound on the moment of the demand to deliver the grain or its value, or be held liable for its conversion, without any

right to reasonably inquire or ascertain concerning the conflicting demands made.

(2) The proper measure of damages to which plaintiff was entitled was not the value of the grain on January 29th, 1921. The court did not award plaintiff judgment for such market value. The market value of the grain on January 29th, 1921, as proved, was slightly over $900. The court awarded to plaintiff the amount of his demand, with interest, due on January 29th, 1921, namely, $634.55, plus foreclosure costs, $44.50; total $679.05. The statute permits a recovery in damages for conversion for the value of the property at the time of the conversion, with interest; or the highest market value of the property at the time between conversion and the verdict, without interest, when the action has been prosecuted with reasonable diligence, and a fair compensation for the time and money expended in pursuit of the property. Comp. Laws 1913, § 7168. But, this rule for damages applicable in conversion does not mean that one may unjustly enrich himself at the expense of another. It does not mean that one holding a chattel mortgage for $100 upon grain held by a bailee, both at the time of conversion $1,000 is entitled to recover such $1,000 and thereby enrich himself to the extent of $900.

Plaintiff could recover only his special interest in the property converted. Only the extent of his actual loss. His compensation must be commensurate with the actual injury suffered. Lovejoy v. Merchants State Bank, 5 N. D. 623, 626, 67 N. W. 956; Hanson v. Skogman, 14 N. D. 445, 449, 105 N. W. 90; State Bank v. Hurley Farmers Elevator Co. 33 N. D. 272, 281, 156 N. W. 921. Plaintiff was not entitled, in any event, to recover an amount exceeding his demand. His demand was the amount of the note with interest up to the date of the judgment, together with whatever fair compensation he might have established in the evidence for the time and money properly expended in pursuit of the property. In this regard the trial court erred to the extent of fixing the amount of plaintiff's demand as of the date of January 29th, 1921, with legal rate of interest thereafter, instead of the total amount of plaintiff's demand up to the time of judgment in accordance with the terms of the note.

(3) The trial court held that no proper deposit was made. The majority opinion holds that defendant, in making the deposit, did not

bring itself within the terms of the statute. The question is, If a proper deposit was not made, how can it be made under § 7594, Comp. Laws, 1913, in a conversion action? The majority opinion assigns no reason why the deposit was not made pursuant to the terms of the statute. Upon this record and the stipulation made between the parties, the defendant, on July 19th, 1921, deposited with the clerk of the trial court the grain itself as well as the storage tickets therefor. The stipulation was that "on July 29th, 1921, the said grain was deposited with the clerk by depositing with the clerk duplicate storage tickets representing the same grain; that the defendant did not have possession of or control over the original storage tickets issued for said grain, and that, therefore, defendant made the best deposit that was possible under the physical conditions existing; that said grain and the storage tickets representing same still remain on file in this court as aforesaid." Plaintiff objected to such deposit for the reason that action was instituted June 18th and the attempted deposit was made on July 29th, 1921, and on the further ground that no actual grain was ever delivered to the clerk and that any delivery made was made by depositing duplicate storage tickets and on the further ground that, as to the plaintiff, such deposit came too late. For the purposes of this action, Was there a deposit made of the grain and of the duplicate storage tickets? No objection was specifically made because the actual grain physically was not transferred, in fact to, and within, the office of the clerk. The parties did stipulate that such grain and the storage ticket representing same were still on file with the court. If plaintiff desired not so to stipulate he should have so stated and not stipulated to a fact and thereafter object to the fact concerning which he has stipulated. But, in any event, the storage ticket is the evidence of or for the physical grain. Comp. Laws, 1913, §§ 3,112, 3,113. It was not necessary for plaintiff to demand the identical grain. A fiction of law interposed by which the bailee was entitled to offer in substitution grain of the same grade and quantity. In effect, the intent plainly was to surrender the grain and all evidences thereof into the hands of the depositary. The defendant did not even withhold the right to deduct storage charges. See State ex rel. Ertlet v. Daniels, 35 N. D. 5, 9, 159 N. W. 17.

In McLaughlin v. Dodge Elevator Co. 43 N. D. 231, 235, 174 N. W. 871, the court held that the property or a duplicate storage ticket rep-

resenting it was not deposited with the clerk of the court but that the deposit consisted of an amount of money which was the equivalent of the value of the grain less storage charges on the day the summons was served on the defendant. This also was an action for conversion. This court held that the statute did not authorize the deposit in court of the present value of the property alleged to have been converted at some prior time. I assume, therefore, that, properly, for the purposes of this action, a deposit of both the grain and the storage tickets were made with the clerk of the trial court. If it were so made and due notice thereof was given as has also been stipulated, what was the effect of such deposit in connection with this action?

The statute has been set forth in full in the majority opinion. The pertinent provisions of the statute provide that whenever a bailee, in possession of any personal property, has notice or knowledge of any right or claim of right, of any person in or to any part of such property adverse to the right of any other claimant therefor, he may deliver such property when an action in any form has been commenced for an account of or growing out of the same, to the clerk of the court in which any such action, having reference to such said property or the value thereof, may be pending or out of which any garnishment or other process may issue with reference thereto, and upon giving the notice described in the statute he is thereupon relieved from further liability to any person on account of such property.

I am of the opinion that the record fully discloses, pursuant to the stipulation, that the defendant, as bailee, did have notice and knowledge of rights and claims of rights of persons to such property adverse to the rights of other claimants therefor; that this action was an action commenced on account of such property, namely, the grain; that the defendant, for the purposes of this action, and pursuant to the stipulation, did deliver such property to the clerk of the trial court. In other words, that the terms of the statute were made available to defendant and it came within the terms thereof, pursuant to the facts stipulated.

In McKenzie v. Hopkins, 29 N. D. 180, 150 N. W. 881, an action was brought to determine the ownership of the proceeds of a certain crop. The rights of an owner, a tenant, and chattel mortgagees were involved. Certain crops were shipped to an elevator company. The elevator company sold the same and retained possession of the proceeds.

It then made an application to the district court stating the amount of money received; that there were adverse claims to such money, and requesting the court to designate a depositary. This proceeding was under the alternative provision in § 7594 permitting an application where no suit has been commenced. The court stated that if the elevator company had failed to make an application it probably would have become involved in expensive litigation with all parties to the action, it might have become liable for conversion or other forms of action; that the statute was intended to obviate this risk on the part of the elevator company; that by making this application for deposit the fund could be preserved intact and the elevator company relieved of liability to either of the claimants; that the statute appeared to be a very salutary provision and intended by the legislature to apply to claims of the nature therein concerned. In McLaughlin v. Dodge Elevator Co. supra, rye grown on Mrs. Kerr's farm was delivered to the elevator on August 28th, 1915, and a storage ticket issued to her. On September 1st, 1915, she assigned the same to plaintiff. About that time a thresher's lien was filed against the crop. On September 15th, 1915 and January 27th, 1916, plaintiff made written demand for the rye but the grain was not delivered, pursuant to the demand, because the agent was advised to hold the grain on account of disputes concerning the same. Plaintiff instituted an action of conversion on March 13th, 1916. On that day defendant deposited in court the market value of the grain as it was upon that day at Wolford, North Dakota. The court held that the statute did not authorize the deposit in court of the present value of property alleged to have been converted at some other time; that when the action involves either specific property or its value the statute authorizes *its* deposit in court; that the statute was merely intended to relieve a person who is in a position analogous to that of a stakeholder who is relieved by delivering up the stakes.

In Austin v. March, 86 Minn. 232, 90 N. W. 384, a statute, chap. 329 Minn. Laws, 1895, almost identical in language with quoted provisions of § 7594, Comp. Laws, 1913, was considered. In that case the defendants delivered wheat and flax into Barry's elevator for which storage tickets were issued. Barry gave to defendants some promissory notes as collateral security for payment of the storage tickets. Barry shipped the wheat to a commission firm in Minneapolis. Defendants

subsequently made claim to the wheat and the commission firm paid to them the value of the wheat. Defendants delivered to the commission firm the storage tickets. The commission firm did not know about the notes as collateral security. The makers of the notes, so held as collateral security, paid the amount thereof to defendants. Plaintiff, successor of the commission firm, brought this action to recover the amount paid by the commission house to defendants on principles of subrogation. During this time Barry was insolvent. The defendants answered contesting the right of plaintiff to any part of the proceeds of the collateral security. Barry's trustee appeared in the action and made claims to the money collected on the collateral security. The defendants, before the entry of judgment, paid into court the portion for which the court had ordered judgment in favor of plaintiff and moved for an order relieving them from further responsibility under the law above stated. The court held:

"This statute was intended to meet cases where a person occupies the position of bailee or custodian, unable to determine to whom the property or money held by him rightfully belongs, and to which he himself makes no claim of right or title. To protect such a person from a possible double liability, the statute provides that he may deposit the money or property in court, and thereupon be relieved from further liability to any of the claimants. It was not intended to apply to persons who make personal claim to the property in their possession, but only to those who are disinterested bailees or custodians, having no claim of their own, and not disputing the rights of the various claimants. The design and intention of the legislature was to give in simplified form the relief granted by courts of equity at common law by the proceeding known as an interpleader, and the rules and principles of law applicable to that proceeding must govern and control proceedings under the statute."

It is apparent that defendant is in the position of a mere stakeholder. It has claimed no rights in the grain. It has asserted no defense against the validity of plaintiff's lien. It has surrendered and deposited in court the specific property and the evidences thereof. It has given notice to all parties interested. It stands in a position of indifference concerning the disposition of the property. It has done all that a stakeholder could do in order to relieve itself of further liability; for it

has surrendered the property and all right and control thereover. Accordingly, in my opinion, the defendant made a proper deposit under the terms of the statute, pursuant to the facts in this record. The statute was enacted for the very purpose of giving an opportunity to a stakeholder to thus relieve himself from further liability. Having made such proper deposit it was relieved from further liability to plaintiff on account of the bailment of such property. But this deposit did not serve to relieve defendant of his liability that had accrued prior to the time of making such deposit. Whatever loss plaintiff had suffered, up to the time of the deposit, was recoverable against defendant within the rule of compensation permitted a lien holder in an action for conversion. If it be asserted, and the proof should show, that the difference between the price or value of the grain on January 29th, 1921, and the price or value at the time when the deposit was made would occasion loss and damage to plaintiff, the answer is that the liability for such loss is not absolved by the statute or the terms thereof. But, if, on the contrary, after the deposit was made the value of the grain should lessen one half or should double in value, the contingent loss or profit as the case may be, is placed upon the parties claiming right thereto and not upon the stakeholder who by the deposit has released his bailment of such property. In other words, the statute fulfills the purpose of relieving a bailee from becoming a speculator in the market concerning the value of grain whereby he either may suffer gain or loss through the rise or depreciation in the price of grain after it has made a proper deposit. Erroneously, in my opinion, the majority opinion serves to emasculate the statute and its purposes by practically permitting no deposit to be made in any action for conversion; for, manifestly, plaintiff herein had no cause of action until a conversion occurred. In my opinion the trial court should have adjudicated the amount of plaintiff's demand to be the principal of the note with interest at 10 per cent up to the date of the judgment. It should have determined the same to be a first lien upon the grain, or the value thereof. It should have ordered a sale of the grain or the delivery thereof to plaintiff for purposes of foreclosure. It should have directed a personal judgment against defendant for the costs accrued up to the time of the deposit made and in case of deficiency in the proceeds of such grain or upon the sale thereof, a personal judgment against defendant for the

amount of loss sustained by reason of the depreciation, if any, existing and resulting between the value of the grain when demanded and the value when deposited. Thus, in my opinion, would the statute be given effect and the plaintiff be fully compensated within the rule of compensation allowable to him.