CITIZENS NATIONAL BANK OF JAMESTOWN, A United States Banking Corporation.

v.

OSBORNE-McMILLAN ELEVATOR COMPANY, A Foreign Corporation.

(131 N. W. 266.)

**Conversion — Chattel Mortgages — Nature of Interest of Mortgagee.**

1. A chattel mortgage in this state does not convey title to the mortgagee, but is only a lien on the property covered thereby. Hence the purchaser of property covered by a chattel mortgage takes it subject to the lien of such mortgage, and a conversion does not take place until the purchaser does some affirmative act, like a tortious detention of such property from the party entitled to possession thereof under the mortgage, or an exclusion or defiance of

such party's right, or the withholding of possession under claim of title inconsistent with that of the mortgagee.

### Conversion — Chattel Mortgages — Evidence.

2. Where mortgaged wheat is sold to an elevator company, and no act of conversion is shown until a demand and refusal to deliver, it is error to direct a verdict for the plaintiff mortgagee suing for conversion, when the only evidence of value relates to a time practically a month prior to demand and refusal. Towne v. St. Anthony & D. Elevator Co. 8 N. D. 200, 77 N. W. 608.

### Chattel Mortgage — Conversion — Evidence — Paramount Mortgage.

3. Evidence of the existence of a mortgage given prior to the mortgage held by the plaintiff, on wheat in controversy, without showing a default in the terms thereof, or a demand for payment of a debt secured thereby, and for possession of the security, or that the plaintiff's subsequent mortgagee had notice or knowledge of its existence, is incompetent.

### Conversion — Chattel Mortgage — Evidence — Motion for Directed Verdict — Subsequent Proof.

4. Appellant's right to have a directed verdict after plaintiff had rested its case was not changed by appellant thereafter submitting evidence concerning the filing and unpaid condition of the first mortgage, a demand for payment, and an agreement for extension of the same.

### Chattel Mortgage — Conversion — Paramount Mortgage — Measure of Damages — Evidence.

5. In an action by a second mortgagee of wheat, against an elevator company for converting such wheat, proof of a prior mortgage thereon, duly filed, and unpaid, does not constitute a defense, but when properly brought before the court may be shown in mitigation of damages, to the extent of the amount due on and secured by the prior mortgage.

### Trial — Directed Verdict — Motion of Both Parties — Waiver of Jury.

6. Numerous decisions of this court to the effect that when both parties move for a directed verdict at the close of a trial, they thereby waive the right to have the facts submitted to the jury, in the absence of any request therefor, and are estopped from predicating error upon the ground that the jury was not allowed to pass upon the facts, are adhered to.

Opinion filed March 22, 1911.

Appeal from District Court, Stutsman county; *Burke,* Judge.

Action by the Citizens' National Bank of Jamestown against the Osborne-McMillan Elevator Company.

From a judgment for plaintiff and an order denying a new trial defendant appeals.

Reversed, and new trial granted.

*Lee Combs,* for appellant.

A purchaser of personal property subject to a mortgage is not neces-sarily a wrongdoer or converter of the property. Sanford v. Duluth & D. Elevator Co. 2 N. D. 6, 48 N. W. 434; Plano Mfg. Co. v. North-ern P. Elevator Co. 51 Minn. 167, 53 N. W. 202; Gillet v. Roberts, 57 N. Y. 28; Ely v. Ehle, 3 N. Y. 506; Abernathy v. Wheeler, 92 Ky. 320, 36 Am. St. Rep. 593, 17 S. W. 858; Parker v. Middlebrook, 24 Conn. 207; Towne v. St. Anthony & D. Elevator Co. 8 N. D. 200, 77 N. W. 608; Catlett v. Stokes, 21 S. D. 108, 110 N. W. 84.

In an action for conversion it is a full defense to show that title and right to possession is in a third party not in the action. Boyce v. Williams, 84 N. C. 275, 37 Am. Rep. 618; Krewson v. Purdom, 13 Or. 563, 11 Pac. 281; James v. Wilson, 8 N. D. 186, 77 N. W. 603; Omlie v. Farmers' State Bank, 8 N. D. 570, 80 N. W. 689; Clenden-ing v. Hawk, 8 N. D. 419, 79 N. W. 878; Reynolds v. Fitzpatrick, 28 Mont. 170, 72 Pac. 510.

The court erred in denying defendant's motion for directed verdict, and in taking the case from the jury, defendant not having waived a jury. Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390.

*John Knauf,* for respondent.

The defendant converted the grain when it rendered it impossible for plaintiff to take possession upon a default in its mortgage. Sanda-ger v. Northern P. Elevator Co. 2 N. D. 3, 48 N. W. 438.

Plaintiff is entitled to possession as against all but first mortgagee. Sperry v. Ethridge, 70 Iowa, 27, 30 N. W. 4.

SPALDING, J.   This appeal was taken from a judgment of the district court in favor of the plaintiff and respondent against the defendant and appellant, and from an order of that court denying a new trial. The complaint alleges that one Peter Liegeman, to secure the payment of his promissory note held by the respondent, executed a chattel mortgage on his undivided half of the crop grown during the season of 1908, upon the north half of section 30, in township 133, north of range 62, west, in Stutsman county, and that during the year 1908 said Liegeman raised, harvested, and threshed as his share of said grain on said land, $445 worth of wheat, oats, and barley, and delivered the same to the appellant at its elevator at Courtney, Stutsman county on or

21 N. D.—22.

about the 7th day of November, 1908; that such grain was at that time of the value of $445. It alleges the right to possession under the terms of the chattel mortgage referred to, a demand and refusal, and conversion of the grain by the appellant, to respondent's damage in the sum of $445. The answer, so far as material, denies specifically and generally the matters set forth in the complaint, concerning the mortgaging, raising, and sale of the grain by said Liegeman, and that it bought the grain so claimed to have been mortgaged, or did any act by reason of which the plaintiff was damaged in any sum. No objections appear in the record aimed at the sufficiency of either of the pleadings.

The execution, delivery, and filing of the chattel mortgage in question were duly proved, and that there was past due, on the note secured thereby, the sum of $384.60. The mortgage contained the provisions usually found in chattel mortgages in this state, regarding the rights of the mortgagee to take possession, and among others, the following: "And it is further agreed that if default be made in the payment of said debt or any part thereof, or if at any time the said mortgagee or its assigns shall deem said debt unsafe or insecure, or whenever it shall choose so to do, then it is hereby authorized  . . .  to remove and sell the same, as provided by law for the sale of mortgaged property, and out of the proceeds of such sale to retain the amount of said debt," etc. It is unnecessary to consider separately all the errors assigned, as the determination of part of the questions disposes of all.

At the conclusion of plaintiff's case, the defendant submitted a motion to the court for the direction of a verdict in its favor. This motion was somewhat extended, but the first ground assigned was that the plaintiff had utterly failed to establish a prima facie case of conversion against the defendant.

The plaintiff had shown the amount of wheat raised, and that the mortgagor had delivered it to the defendant's elevator in September, or the first part of October, 1908; that at the date of such delivery the price of wheat was 93 cents; that he sold it to the defendant in the latter part of October or the first part of November of the same year, and that the price of wheat on the day of the sale was 95 cents per bushel, and that there were 543 bushels. It was shown that a demand was made by respondent on the elevator company for the wheat on the 20th or 21st day of December, 1908, and another demand there-

for some time in April, 1909, both of which were refused. It was not shown that any of the wheat had been mixed with other wheat, or that it had been shipped from the state.

1. The chattel mortgage did not transfer the title to the wheat to the respondent, but was only a lien thereon as security for the debt it described, and, being only a lien, appellant could store or purchase it, and do so subject to the lien of respondent's mortgage. Sanford v. Duluth & D. Elevator Co. 2 N. D. 6, 48 N. W. 434; Catlett v. Stokes, 21 S. D. 108, 110 N. W. 84. Having taken it subject to such lien, a conversion does not take place until some affirmative act on the part of the appellant, like tortious detention thereof from the owner, or the party entitled to the possession thereof, or an exclusion or defiance of such party's right, or the withholding of possession under a claim of title inconsistent with that of the plaintiff or owner. Taugher v. Northern P. R. Co. ante, 111, 129 N. W. 747. And as no such act was proven until the demand and refusal to deliver, there was no proof of conversion as having taken place prior to the 20th day of December, 1908. Towne v. St. Anthony & D. Elevator Co. 8 N. D. 200, 77 N. W. 608.

2. The respondent having neglected to show the value of the grain as on the date of conversion, and only at the dates of delivery and sale, some weeks prior to the demand, had not made a prima facie case when it rested and the appellant submitted its motion for a directed verdict. Hence, it was error to deny such motion. Towne v. St. Anthony & D. Elevator Co. supra, First Nat. Bank v. Minneapolis & N. Elevator Co. 11 N. D. 281, 91 N. W. 436. This rule rests upon the provisions of § 6585, Rev. Codes 1905, which reads: "The detriment caused by the wrongful conversion of personal property is presumed to be (1) the value of the property at the time of the conversion with the interest from that time; or (2) when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and (3) a fair compensation for the time and money properly expended in pursuit of the property."

3. Another ground stated for moving for a directed verdict was that it appeared from the respondent's evidence that there existed a prior unsatisfied valid outstanding lien upon the same property, given by the same party to one Hoster, which lien was given to secure the payment

of a debt which matured September 15, 1908, and in the payment of which default had occurred prior to the alleged sale or delivery to the appellant, as shown by respondent's own evidence, and that such creditor had demanded payment of the debt secured thereby, and was entitled to the possession of the grain as against plaintiff. The evidence shows a mortgage given to one Hoster to secure a note for about $115 some two weeks prior to the execution of the mortgage under which the respondent claims, but did not show by competent evidence that such mortgage had been filed in the office of the register of deeds, or that appellant had notice or knowledge of its existence. We conclude that an insufficient showing had been made to warrant the trial court in taking the Hoster mortgage into consideration in acting upon the motion for a directed verdict at that time. Hence, as to this question no error was committed.

4. After the denial of appellant's motion for a directed verdict, appellant submitted evidence showing that the mortgage to Hoster had been filed October 26, 1907, and was still unsatisfied, and that a demand had been made upon the mortgagor for the payment of the amount due Hoster under such mortgage, but that an agreement had been entered into between Liegeman and such mortgagee for an extension of the time of payment of the debt secured thereby until the fall of the year 1909, whereupon both parties rested. The appellant then renewed its motion for a directed verdict upon substantially the same grounds stated at the close of respondent's case. Respondent also moved for the direction of a verdict without stating any grounds for such motion. The motion of the respondent was granted. The same reasons which we have stated as grounds for holding it error to deny appellant's motion in the first instance apply to its motion at the close of the case.

5. Another reason is assigned why it is claimed that the court erred in not granting appellant's motion for a directed verdict. Having arrived at the conclusion that the motion should have been granted under the authority of the cases cited, it is only necessary to refer to this additional ground claimed for guidance in case of a new trial. Appellant insists that a second mortgagee cannot maintain an action for conversion against a purchaser from the mortgagor of property on which there exists a prior mortgage which is in default. In this we think the appellant is mistaken, as this court has repeatedly held, as we have shown, that a chattel mortgage in this state does not convey title; it

is only a lien. Authorities cited by appellant under this point are from states where a chattel mortgage conveys title.

If the mortgagor has the right to sell, and the elevator company the right to buy, mortgaged property, and the latter takes it subject to the mortgage, it stands in the place of the mortgagor, except that it does not become personally liable on the note secured by the mortgagor.

No prior mortgage was pleaded by the defendant, either as a defense or in mitigation of the damages. No demand was shown to have been made by the holder of the first mortgage either on the mortgagor, the appellant, or the elevator company, for the delivery of the wheat by virtue of such mortgage. It was shown that the time of the payment of the indebtedness secured by the first mortgage had been extended to the fall of the year 1909. The effect of this extension of the first mortgage as the lien on the crop of 1908 is not discussed by counsel. The extension of the first mortgage, if any lien remains by reason thereof, upon the crop of 1908, under the circumstances of this case, if it may be a defense under any circumstances, is not a defense to an action for conversion brought by the holder of the second mortgage against the purchaser of the grain. Under proper pleadings, the existence of the lien of the first mortgage may be shown by the defendant, when sued by the holder of the second mortgage for conversion, to reduce the damages recoverable by the plaintiff. The holder of the second mortgage is only entitled to recover the value of his interest in the mortgaged property, and the value of his interest is necessarily reduced if the security is inadequate to respond to both liens, to the extent of the deficiency. In this case the wheat was more than sufficient in value to pay either one of the liens, but was inadequate to pay both. The first mortgage being for much less than the value of the wheat, the second mortgagee could recover the value of the wheat less the amount of the first lien. In Newman v. Tymeson, 13 Wis. 172, 80 Am. Dec. 735, which was a case identical with this, the court says: "The appellant was, by virtue of the mortgage, entitled to the immediate possession of the property as against all the world save the mortgagee named in the first mortgage, if still unpaid, and consequently can maintain an action for a taking which was not in pursuance of that mortgage, but in defiance of his right." See also Frisbee v. Langworthy, 11 Wis. 375; Sperry v. Ethridge, 70 Iowa, 27, 30 N. W. 4; Moore v. Prentiss Tool & Supply Co. 133 N. Y. 144, 30 N. E. 736; Treat v. Gilmore, 49 Me. 34.

6. The last assignment of error which need be referred to is that the court erred in taking the case from the jury by reason of the motions for a diroted verdict. No reference is made to the fact that the motion of the plaintiff stated no reasons why a verdict should be directed. We therefore treat it the same as though it were a motion upon the ground of insufficiency of the evidence to constitute a defense. The appellant insists that the court erred in granting plaintiff's motion. We have already shown that the error consisted in directing a verdict for the plaintiff, and not directing it for the defendant. Appellant's position is that, by making such motion, it did not waive its right to a jury trial of the issues involved. This identical question has been repeatedly decided in this court adversely to the contention of the appellant. The last pronouncement is found, we think, in Duncan v. Great Northern R. Co. 17 N. D. 610, 19 L.R.A.(N.S.) 952, 118 N. W. 826, where, in conformity with previous decisions of this court, it was held that when both parties, after the submission of all their evidence, make motions for a directed verdict, and neither one requests the submission of any fact to the jury, they thereby waive any right they might otherwise have to an undirected verdict, and are estopped from assigning error for not submitting the facts to the jury. See also Stanford v. McGill, 6 N. D. 536, 572, 38 L.R.A. 760, 72 N. W. 938; New England Mortg. Secur. Co. v. Great Western Elevator Co. 6 N. D. 407, 71 N. W. 130; Bank of Park River v. Norton, 12 N. D. 497, 97 N. W. 860; Larson v. Calder, 16 N. D. 248, 113 N. W. 103. Quotations from these authorities are unnecessary. In the instant case the motions were made without qualification, and no request was made for the submission of any fact to the jury. Appellant cites Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390, in support of its contention, but such authority is not in its favor. In that case one of the motions was qualified, and under the circumstances surrounding it the court held that it was insufficient to waive the submission of questions of fact not covered by the motion, to the jury, but expressly recognized the former decisions of this court to the effect that a submission to the jury is waived when nothing equivalent to a request that some fact or facts be submitted to the jury is made.

There is, however, one point of difference between the action of the court in the case at bar on these motions, and those in most of the authorities pointed out. In the case at bar the court discharged the

jury and took the case under advisement, and, in due time, made findings of fact and conclusions of law identically as though no jury had ever been impaneled, and entered judgment tnereon. It is suggested that, this not being a literal compliance with the motion of either party, in that the jury was not permitted to go through the form of returning a verdict, the procedure was erroneous. We see no material distinction between this method and the one followed in most of the former cases. The fact that the parties had a constitutional right to a trial by jury in no manner affects the case. Authorities are to the effect that they, by the motions to take the case from the jury, waived a trial by jury, and that, not having thereafter requested the submission of any facts or questions to the jury, they are estopped from predicating error upon the action of the court in not permitting the jury to find the facts, and it is not essential that the form of returning a written verdict, signed by the foreman of the jury, be pursued in such case. If the court had power to direct the jury, it could proceed in a more direct manner to the same end, by finding the facts itself. Gammon v. Abrams, 53 Wis. 323, 10 N. W. 479; Cahill v. Chicago, M. & St. P. R. Co. 20 C. C. A. 184, 46 U. S. App. 85, 74 Fed. 285; Bank of Park River v. Norton, 12 N. D. 497, 97 N. W. 860. In the last named case the procedure was identical with that in the case at bar, except that the trial court, after the motions were made, asked the parties if they desired to stand upon such motions, and, upon receiving an affirmative response, the jury was discharged and the court made findings. This action was sustained, and we see no difference whatever in principle between the two cases. The parties could waive their right to a jury by silence as plainly as by words. Some members of this court think, however, that, while both methods are proper, it is better practice to require the jury to return a formal verdict under the direction of the court.

The judgment of the trial court is vacated, and a new trial granted.

Hon. C. A. Pollock, Judge of the Third Judicial District, sat in place of Burke, J., disqualified.