Lozier Automobile Exchange, Appellee, v. Interstate Casualty Company, Appellant.

**INSURANCE: Agency—Proof.** An agent issuing an insurance policy may, under some circumstances, testify to the agency of an adjuster, even though he does not know the terms of the contract of agency.

**EVIDENCE: Competency—Report of Agent.** In an action on a policy of insurance against theft, a written report by the insurer's agent, covering matters discovered by him and showing a theft, is competent.

**INSURANCE: Theft Insurance—Evidence.** Evidence held to establish the theft of the insured subject-matter.

**INSURANCE: Damages—Theft Insurance.** In an action on a policy of insurance against the felonious conversion of an article sold by the insured, the measure of damages is the amount due on the contract of sale.

**ACTIONS: Splitting—Loss Under Policy of Insurance.** Under a blanket policy of insurance against the felonious conversion of automobiles sold from time to time by the insured, wherein each automobile was treated as a distinct transaction, a separate action may be brought for the loss of *each* machine.

**INSURANCE: Proof of Loss.** Proofs of loss are all-sufficient when it is made to appear that the insured reported the facts fully to the agent, who embodied the same in the written proofs which the insured signed and left with the agent of the insurer.

**EVIDENCE: Competency—Matter in Issue.** Declarations of an agent which leave nothing for the jury to determine are nonadmissible.

**PRINCIPAL AND AGENT: Declarations of Agent.** Declarations of an agent after his agency has terminated are not receivable against the former principal.

*Appeal from Des Moines Municipal Court.—J. E. Mershon,*
Judge.

November 20, 1923.

Rehearing Denied April 4, 1924.

Action at law, to recover from a theft insurance company
the loss which plaintiff alleges it sustained by reason of the
wrongful conversion of an automobile which had been sold by
plaintiff to one F. E. Wolfe, on a conditional sale contract. Trial
to a jury. Verdict for plaintiff for $668.80. Defendant ap-
peals.—*Affirmed.*

*Dunshee & Brody,* for appellant.

*C. S. Missildine,* for appellee.

Preston, C. J.—Plaintiff is incorporated under Iowa laws,
and the defendant under the laws of Alabama, with its principal
place of business at Chicago. In November, 1919, plaintiff, a
dealer in used automobiles, entered into a contract of insurance
with defendant whereby defendant agreed to "indemnify
plaintiff against any and all pecuniary loss or losses which the
insured shall sustain by reason of the theft, larceny, embezzle-
ment, or larcenous, felonious, or wrongful conversion of any
automobile covered hereby, same being the direct act of the pur-
chaser of said automobile, or committed or occasioned by or
through collusion or connivance of said purchaser with others,
during the operation of any conditional sale contract, or mort-
gage, made by the insured, retaining title to, or a first lien upon,
any automobile *certified* under this policy," subject to certain
agreements. The policy further provided that the insurance
company should not be liable for any loss occasioned by accident
to or destruction of the automobile, and further, that proof of
loss or damage, under oath, on forms provided by the company,
must be furnished to it at its home office in Birmingham, Ala-
bama, or at the office of the duly authorized agents countersign-
ing this policy, within thirty days from the date of discovery of

such loss or damage, setting forth the nature of the circumstances and the amount of damage claimed for.

"The proof of loss shall state the amount of actual cash due to the insured, at the time of loss, and the amount of loss thereon, and define the amount of the interest of the insured in the automobile for which indemnity is claimed, and shall also contain reasonable evidence of theft, conversion, etc., of said automobile."

On January 28, 1920, plaintiff, as seller, entered into a contract with one F. E. Wolfe, as purchaser, providing that:

"In consideration of one dollar, and upon payment of the further sum of $630 promptly when due and payable as specified, the seller does agree to sell to the purchaser a Paige automobile described, which has this day been delivered to said purchaser."

The purchaser agreed to pay to plaintiff at its office in Des Moines the sum of $630: $50 on the first of March and $50 on the first of each month thereafter, all due in 7 months, with 8 per cent interest until paid. On the same day, Wolfe executed to plaintiff a writing, the substance of which is as follows:

"For and in consideration of the sum of $570, the receipt of which is hereby acknowledged, have this 28th day of January, 1920, sold to Lozier Auto. Exchange, one Paige motor" (described).

The parties treat this instrument as a bill of sale, and the instrument first referred to as a conditional contract of sale, where plaintiff agreed to resell the automobile to Wolfe for $630, on the terms stated.

The plaintiff's manager testifies that the defendant carried the insurance of plaintiff's sales contracts under the agreement.

"Sweeney-Grant Company was the agency of the defendant which issued this policy. The method, under the contract, of describing the particular cars that were insured under this contract was that we turned in the make of the car, the year, the serial number, and motor number, and in turn we got back from them a certificate having this same information upon it. One of these is Exhibit A, sent back to us from Sweeney-Grant Company. The description of the Wolfe car in controversy appears on it."

Exhibit A is as follows: "Wrongful conversion contract covering a period up to January 31, 1920." The exhibit shows twelve entries, among which appears the Wolfe Paige car, giving the date, numbers, etc., amount of loan, $630, premium $2.50. The special insurance certificate was issued, covering each individual car as it was sold under the contract by plaintiff, and a special insurance certificate was issued for the particular car in question in this case, as before stated. Plaintiff alleges, and the evidence shows, that the balance due plaintiff at the time of the alleged conversion was $630, with interest. It alleges further that, about February 20, 1920, Wolfe absconded with the automobile, and wrongfully converted it to his own use, and deprived plaintiff of its right and lien on the automobile, and that this defendant therefore became a debtor to plaintiff on account of the wrongful conversion by Wolfe, in the amount of $630, with interest.

The issues presented, as stated by appellant, were whether the automobile was stolen or converted by the purchaser; whether the insured was entitled to recover the amount of money loaned, with interest, on the security of the automobile insured, or the value of the automobile at the time of the conversion; whether plaintiff was barred from maintaining this action, because of having split its cause of action by bringing another suit on the policy for the conversion of another car, and prosecuting the same to judgment, the claims on which this and the other suit were based having both arisen and matured prior to the institution of either suit; and whether the insured furnished proofs of loss to the company at its home office, or to the Sweeney-Grant Company, its agents in Des Moines, within thirty days from the date of the discovery of its loss.

1. Plaintiff's manager testifies that on January 28, 1920, when the automobile was sold, Wolfe lived in Des Moines, and later moved to Altoona.

"I went there to see him, but did not. I searched very carefully for him. I was not able to find him, for the reason he had left there. I did not definitely find where he had moved to. I continued to search for him. I went to the state house and looked through the automobile license bureau, to see if he had sold the car, but was un-

1. INSURANCE: agency: proof.

successful in finding anything. I made another trip to Altoona after that, but did not locate where Wolfe had gone. After that, I took the matter up with Mr. Sweeney personally. I was at Altoona between April 5th and 8th. Mr. Sweeney is president of the Sweeney-Grant Company, the man I always dealt with. I outlined the case as it was, and advised him what search was made. I turned over all our papers, showing him the effort I made to locate him, and he made out a proof of loss, and I signed it. It was a sworn proof of loss. I turned it over to Mower.''

It appears from the testimony of Sweeney, agent for defendant, that Mower came to Des Moines, as claim adjuster for defendant, some time in April, 1920. Witness does not know how long he continued as such adjuster, but says that Mower was agent for the company until September and October, 1920. The exact date is not fixed, but his agency terminated prior to December, 1921. Witness Sweeney also testifies that he had considerable conversations and business with Mower with reference to the business of this company. Witness was unable to say whether Mower's contract of employment was written or oral, or the terms of it, but says that he was notified that Mower would take care of the claims, instead of witness. When witness had the claims, he investigated the facts, and reported to the company after he had adjusted them.

It is argued by appellant that the testimony of Sweeney as to the agency of Mower is a conclusion, and that its objection on that ground should have been sustained. Under the circumstances shown, and the relations existing between Sweeney and the defendant company and Mower, Sweeney could testify as to the agency of Mower, even though he did not know the terms of the contract between Mower and the company. It may be it is somewhat in the nature of a conclusion, but such is often the case. A member of this court could testify as to who the other members are, without counting the ballots or examining the certificate of election. A hotel guest, in the ordinary run of affairs, may safely pay the hotel clerk behind the desk, without requiring him to exhibit his contract of employment. In such matters, appearances have something to do with it. See, on this point, *Moyers v. Fogarty*, 140 Iowa 701, 712; *In re Will of*

*Eveleth,* 177 Iowa 716, 731; *Zellmer v. McTaigue,* 170 Iowa 534, 537.

Under date of June 26, 1920, while Mower was the adjuster for the company, he reported to plaintiff by letter, in regard to this case, that he had, after lengthy investigation, succeeded in locating Wolfe at Council Bluffs; that, on June 18th, he had secured the arrest of Wolfe on a charge of larceny and concealing the stolen property; that the car was located, and upon the arrest, was impounded by the sheriff at Council Bluffs, and was being held by him until the conclusion of the criminal proceedings; that Wolfe was under bonds, and promised to make full reimbursement of his indebtedness within two or three weeks; that, if he failed in this respect, Mower had an arrangement with the prosecuting attorney to have the case set for trial, so as to bring pressure upon Wolfe to keep his promise; that, in the event that full restitution was made, it would, of course, be most advisable to drop the matter of criminal prosecution; that he would keep plaintiff advised, and within a short period trusted that he would be able to forward remittance to plaintiff for the amount of plaintiff's outstanding balance against Wolfe. This letter is signed, "Interstate Casualty Co., by A. H. Mower."

2. EVIDENCE: competency: report of agent.

A general objection to this letter was interposed by the defendant, as hearsay, and not binding on the defendant. No specific objection was made to the different parts of the letter. *State v. Hasty,* 121 Iowa 507, 517; *Hay v. Hassett,* 174 Iowa 601, 606. Appellant did make a specific objection to another portion of the letter, and objected to alleged hearsay declarations of Mower made after his agency with the company had terminated, which will be referred to later in the opinion. So far, we think it was competent, as bearing on the question of conversion.

It is argued by appellant that the entire evidence was not sufficient to sustain a finding by the jury that there was theft or conversion of the automobile by Wolfe. The evidence we have set out is undisputed, and we think it is ample to sustain the finding. Insurance of this character is very hazardous. It is true that cases might arise where it would be difficult to prove a conver-

3. INSURANCE: theft insurance: evidence.

sion. No one saw defendant leave Altoona with the automobile, and if they had, it would ordinarily indicate nothing more than a trip to some other town.

2. The recovery had was the amount due plaintiff from Wolfe. The trial court so interpreted the policy, and instructed on that theory as the measure of damages. It is contended by appellant that the measure of recovery is the value of the car at the time of conversion, and that, plaintiff having offered no evidence on that theory, the defendant's motion for directed verdict should have been sustained. Appellee cites no authorities on this proposition. Appellant cites 4 Sutherland on Damages (3d Ed.) 3314; *Citizens Nat. Bank v. Osborne-McMillan Elev. Co.*, 21 N. D. 335 (131 N. W. 266); *Kasper v. Walla*, 49 Neb. 288 (68 N. W. 476); *Showman v. Lee*, 86 Mich. 556 (49 N. W. 578); and other cases. Some of these cases are to the effect that the measure of damages in an action by the mortgagee for the conversion of mortgaged chattels is the amount of plaintiff's mortgage, not exceeding the value of the property converted. None of the cases cited are like the instant case, or under a policy of insurance containing the provision found herein. It is so conceded by counsel. Under the terms of this policy, the measure of plaintiff's recovery was "any and all pecuniary loss or losses which the insured sustained by reason of the conversion of the automobile," which, in this case, was the balance due on the contract. That is what plaintiff lost. That it was intended that the insurance should protect plaintiff to this extent is shown by the fact that, on a certificate of insurance, the company was careful to require complete data as to the list price of the car, the actual cost of the car to the owner, the amount of the lien, and how the same was to be paid, —showing that the company intended to protect itself against over-insurance, at the time the policy was issued. Furthermore, the policy issued by the defendant provides that the proof of loss or damage "shall contain a complete description of the automobile, stating the amount of the actual cash due to the insured at the time of the loss and the amount of loss thereon and define the amount of the interest of the assured in the auto mobile for which indemnity is claimed," etc. By this provision the company itself seems to have interpreted the policy

4. INSURANCE: damages: theft insurance.

contrary to the contention now made by appellant. We think the trial court properly instructed as to the measure of damages.

3. It appears that a number of cars were insured by the defendant for plaintiff, and that, as each car was sold, a separate certificate was made for that car, for which the plaintiff paid $2.50. Before this suit was brought, to recover for the loss of the car in question herein, another customer of plaintiff's had converted another car, for which suit had been brought and prosecuted to judgment. It is contended by appellant that plaintiff should have sued for both cars in one action, and that plaintiff may not split his cause of action, and that, if he does so, a judgment upon the merits in one suit is a bar to subsequent actions. It may be conceded that, in a suit upon an account, or the like, all items should be included in one suit, and that, if this is not done, all items of the account are adjudicated which might have been sued for, even though not included. This is the tenor of the cases cited by appellant. For instance, in *Williams-Abbott Elec. Co. v. Model Elec. Co.,* 134 Iowa 665, it appeared that the plaintiff had made twenty separate sales of its goods to the defendant. It began fourteen different actions to recover the money due it, and recovered a judgment in one. This judgment was pleaded by defendant as a bar to a recovery by plaintiff in each of the other cases. Such is not the situation here. Each loss was an entirely separate transaction. Possibly plaintiff could have sued for both in two counts, as in the case of suit upon separate notes. But plaintiff was not bound to do so. The reason for the rule against splitting of causes of action is stated in 1 Corpus Juris 1107. At page 1108, it is said that:

"The application of the rule is restricted entirely to claims and causes of action which are single and indivisible; and it does not prevent the bringing of separate actions upon separate and distinct causes of action, whether such causes arise out of contract or tort, and notwithstanding that they ·are of such a character that they might properly be joined in the same action, this circumstance being immaterial, except as authorizing the court, in proper cases, to order a consolidation of the different actions."

See, also, same volume, page 1110, where it is said that:

5. ACTIONS: splitting: loss under policy of insurance.

"A single cause of action or entire demand cannot be split up into different parts so as to bring the same within the jurisdiction of a court of limited jurisdiction, * * * but if the causes of action are separate and distinct, different actions may be brought thereon in a court of limited jurisdiction, although they might have been joined in one action in a higher court."

At page 1112, same volume, it is said:

"The great weight of modern authority is to the effect that a contract to do several things at several times is divisible in its nature because, although the agreement is in one sense entire, the performance is several, and an action will lie for the breach of any one of the stipulations, each of them being considered in respect to the remedy as a several contract."

It is so here. While, in a sense, the original policy of insurance was issued as a sort of a blanket policy, it appears that, whenever another automobile was sold, an additional certificate was issued for it, upon which an additional premium of $2.50 was paid. Numerous cases are cited in the references before given, to sustain the proposition. The court ruled correctly as to this proposition.

4. It is next contended by appellant that plaintiff failed to furnish proper proofs of loss to the defendant at its home office in Alabama, or at the office of the duly authorized agents countersigning the policy, within the time re-

6. INSURANCE: proof of loss.

quired. It appears without dispute that plaintiff gave Mr. Sweeney, who was the duly authorized agent of defendant, and who wrote the policy in question, a detailed report of the circumstances, and outlined what he had done, and that Mr. Sweeney had a full report, and that then plaintiff signed proofs of loss and turned them over to Mr. Mower, who was the claim adjuster for the defendant company. Mr. Sweeney testified that plaintiff furnished the information which the company and policy required, regarding the loss, and that Mr. Sweeney turned the proofs over to Mower. It seems to us that this was sufficient.

5. It is briefly argued that plaintiff was not entitled to interest at 8 per cent, but only at 6, because, as between plaintiff and defendant, there was no contract to pay 8 per cent. We think it is a sufficient answer to this to say that the contract

between plaintiff and Wolfe was that Wolfe should pay 8 per cent. The amount of plaintiff's claim, then, and of its loss, was the amount owed plaintiff from Wolfe, with interest at 8 per cent.

6. Going back to the letter from Mower to plaintiff, of June 26, 1920. There was this further clause following the statement that, "after a lengthy investigation, I succeeded in locating Mr. Wolfe at Council Bluffs on the 18th instant:"

7. EVIDENCE: competency: matter in issue.

"And found that Mr. Wolfe had left Des Moines and removed his effects from this city under circumstances showing conclusively an intent to fraudulently conceal his property."

Appellant made a specific objection to this part of the letter. The court also permitted, over proper objection, declarations of Mower, made to McMartin in December, 1921, and February, 1922, from which it appears that Mower had collected money from Wolfe and applied it all on the car; that this was money that should have been paid to another firm on the Wolfe account; and that Mower collected it on the car. Mower did not testify as a witness, but his statements and declarations, made after his agency had terminated, were testified to as stated.

The admission of these items of evidence was improper. The statement in the letter determined the very question that was being submitted to the jury, as to whether there was a wrongful conversion. The statement in the letter is that the effects were removed under circumstances showing conclusively an intent to fraudulently conceal his property. The statements to McMartin were clearly hearsay. This being so, the erroneous admission of this testimony requires a reversal, if the admission of the evidence was prejudicial to the defendant. But the evidence had a bearing only on the question of the conversion of the automobile. We have seen in a prior division of the opinion that without such testimony the evidence was ample to sustain the finding. The evidence for plaintiff was in no manner contradicted by testimony offered by the defense. Had there been such testimony, then the erroneously admitted evidence would have been thrown into the scales against the defendant, and in that

8. PRINCIPAL AND AGENT: declarations of agent.

case would have been prejudicial and reversible error How-
ever, this evidence was cumulative, and since the fa t f conver-
sion was abundantly established by evidence outside of this, and
there, was no conflict, we are unable to see how the defendant
could be prejudiced by the admission of the testimony.

On the whole record, we think that the case is one for
affirmance, and the judgment is—*Affirmed.*

STEVENS, DE GRAFF, and VERMILION, JJ., concur.