LOZIER AUTOMOBILE EXCHANGE, Appellee, v. INTERSTATE CASUALTY COMPANY, Appellant.

**INSURANCE: Theft Insurance—Evidence.** Evidence reviewed, in an action on a policy of theft insurance, and held sufficient to present a jury question on the issue of felonious conversion.

**INSURANCE: Proofs of Loss.** Proofs of loss are all-sufficient when made out by the agent of the insurer, on the basis of information furnished by the insured, and without objection or further request on the part of the insurer.

**INSURANCE: Theft Insurance—Notice of Claim.** A provision of a policy covering loss by theft, requiring the assured ''to give the company immediate notice of any event which may be or become the basis of any claim by the assured,'' has reference to the *wrongful conversion* by the conditional purchaser of an article, and not to the failure of such purchaser *to keep up his required payments.*

**ACKNOWLEDGMENT: Presumptions—Untruthful Recital.** A certificate of acknowledgment which is regular on its face carries the presumption that the person purporting to make the acknowledgment of the instrument is the person named in the instrument acknowledged; and when such is admittedly the fact, it becomes immaterial that that part of the notary's certificate *is untrue* which recites that the acknowledging party is ''to me known to be the identical party named in and who executed the foregoing instrument.''

**TRIAL: Instructions—Nonassumption of Fact.** Instruction reviewed, and held not to assume an issuable fact.

**TRIAL: Instructions—Prejudicial Error Negatived.** A cause will not be reversed because of a faulty instruction when the instruction as a whole, together with the admitted facts, negatives prejudicial error.

*Appeal from Des Moines Municipal Court.*—J. E. MERSHON, Judge.

MAY 6, 1924.

Action to recover on a policy of indemnity. From a judgment on a verdict for plaintiff, defendant appeals.—*Affirmed.*

*Dunshee & Brody,* for appellant.

*C. S. Missildine,* for appellee.

Vermilion, J.—The parties here and the contract of insurance sued upon are identical with those involved in *Lozier Auto. Exchange v. Interstate Cas. Co.,* 197 Iowa 935. That case is decisive of many of the questions raised here.

The plaintiff in this case seeks to recover on the policy of indemnity issued by the defendant to it, on account of the alleged wrongful conversion by one Roy Thomas of an automobile sold by plaintiff to him upon a conditional sale contract. At the close of plaintiff's evidence and at the close of all the evidence, the defendant moved for a directed verdict in its favor. The motions were overruled, and the jury returned a verdict for the plaintiff for the balance due plaintiff from Thomas on the purchase price of the car, with 8 per cent interest from the date of the sale of the car.

1. Insurance: theft insurance: evidence.

The errors assigned relate in part to the overruling of the motions to direct a verdict.

It is urged that there was no evidence that the automobile was wrongfully converted. The contract of purchase is dated February 23, 1920, acknowledges the payment of $100 on the purchase price, and provides that Thomas shall pay $25 on the following day and $50 per month thereafter until all is paid. The evidence shows that he made only one payment of $50, on April 13, 1920. After the latter date, plaintiff had some correspondence with Thomas, and on July 12, 1920, a registered letter, addressed to him at Battle Creek, Iowa, was returned, marked "Returned to writer unclaimed. Moved. Left no address." Shortly thereafter, the manager of the plaintiff company tried to locate the car through the state license department, but was unable to do so. He then went to Battle Creek, where Thomas had told him he lived and was running a bakery. He went to the bakery and to the house where he was told Thomas had lived, and to the garage where he was told Thomas

had kept the car. He did not find either Thomas or the car. He found six or seven people who knew Thomas, but none of them knew where he was.

While the evidence of a wrongful conversion of the car by Thomas is not strong, it was not contradicted, and we think presented a question for the jury. Direct and positive evidence of conversion under such circumstances would often be difficult, if not impossible, of production. The claim of plaintiff is, in substance, that Thomas left or absconded, taking the car or concealing or disposing of it, and thereby deprived plaintiff of its lien. Such an act is not ordinarily done in the presence or with the knowledge of others. The evidence tended to show that Thomas had lived at Battle Creek; but that he could not be reached by mail addressed to him there, and that, upon a search, neither he nor the car could be found there, and that persons who knew him there did not know where he had gone. These circumstances, in connection with his neglect of his obligation to make payments on the car, were sufficient to sustain a finding that he had converted the car to his own use, to plaintiff's loss.

Error is assigned on the admission of the testimony of the witness Frank Lozier, who visited Battle Creek, regarding the fact that the car had been at that place, and where it had been kept there. There is no statement as to where the testimony is to be found in the abstract. The only reference in direct examination to the car or any garage in connection with the visit of the witness to Battle Creek is the following:

"I went to two different places besides the bakery and the garage and the place where he had lived. I could not locate him. I did not find the car. The car was not there."

In the cross-examination appears the following:

"Q. You learned where the car had been kept, from the people up there telling you? A. Yes, from the garage man."

Thereupon, defendant moved to strike "all the testimony of this witness concerning * * * the location of the garage, under what circumstances the car had left the garage, and the fact that the car was kept or had been at that place," as hearsay. The motion was sustained, "so far as it concerns or relates to

what was told the witness with reference to someone paying $50 for garage rent and repairs.''

The record does not show that the witness had testified that the car had been at Battle Creek, or where it had been kept there, except in answer to this question on cross-examination; and that clearly called for hearsay. We think the defendant cannot complain of this.

It is said that there was no evidence offered to prove that proofs of loss were furnished the company within the time or containing the information required by the policy. Concerning this, the witness Frank Lozier testified that, pos-

2. INSURANCE: proofs of loss.

sibly a week after he came back from Battle Creek, he talked with Mr. Sweeney (the agent who had written the policy), and gave him a detailed report of the circumstances, and outlined what had been done; and he took a full report, and he (Lozier) signed proofs of loss and turned them over to Mr. Mower. That he went to see Mr. Mower, and that he was drunk; that, after four or five trips, Mower told him that the proofs of loss were misplaced, and that he should make out new ones, which he did.

Mower was the adjusting agent of the defendant, and was located at Des Moines.

Mr. Sweeney testified:

''Frank Lozier, of the Lozier Automobile Company, reported to me with reference to this particular claim. That was prior to August 5, 1920. At that time, Mr. Lozier furnished us with information that our company and policy required, regarding the loss. I turned them over to the claim man, Mr. Mower.''

On cross-examination, he said he did not know whether Lozier turned over to him written proofs of loss in this claim.

On redirect examination, he said:

''I do know that he gave me the information and I verified it and turned it over to Mr. Mower.''

The facts are substantially the same as in the former cited case between the same parties, and, as in that case, are undisputed. They were there held to be sufficient to establish the furnishing of proofs of loss.

The policy required the assured to ''give the company

immediate notice of any event which may be or become the basis of any claim by the assured'' under the contract. It is contended that this provision required the plaintiff to notify the defendant of the default of Thomas in his payments on the car, and that it did not do this within the time contemplated by the policy. We do not so construe the contract. It is not the failure of Thomas to make the payments agreed upon that is the basis of the claim against the defendant, but his wrongful conversion of the car, thereby depriving the assured of its lien. That the facts relied upon as establishing the conversion were given to the company's agent on the return of Lozier from Battle Creek,—he says, possibly a week after his return,—is undisputed. The jury was instructed that, if it found that a reasonably prompt notice was given after plaintiff discovered that the automobile had been wrongfully converted, that would be a compliance with the requirement for immediate notice. No complaint is made of this rule or of the instruction in this respect. We think that the evidence on this point is sufficient to sustain the verdict.

*3. INSURANCE: theft insurance: notice of claim.*

The policy contained a provision by which the assured agreed to cause the conditional sale contract to be recorded or filed for record in the proper recording office in the county where the automobile insured should be located and to ''in all respects comply with the provisions of the laws in relation to conditional sale contracts, mortgages or lease agreements, and do and perform each and every act necessary to make such conditional sale contracts, mortgage or lease agreement a fixed, valid and continuing lien upon the automobile'' insured.

*4. ACKNOWLEDGMENT: presumptions: untruthful recital.*

The conditional sale contract was signed by Thomas and acknowledged before Alfred G. Lozier, a notary public. The certificate of acknowledgment is as follows:

''On this 23d day of Feb., A. D. 1920, before me personally appeared F. W. Lozier & Roy Thomas to me known to be the identical person named in and who executed the foregoing instrument and acknowledged that he executed the same as his voluntary act and deed.''

The instrument was recorded in the proper county. The notary testified that he had never seen Thomas before or after

the day he took his acknowledgment, and did not know any-, thing about him, except that he was a discharged soldier, and showed him his discharge papers.

It is claimed that the conditional sale contract was not properly acknowledged, and was not entitled to record, and that, therefore, the assured had failed to observe the provision of the policy requiring it to comply with the law in relation to such instruments and to do every act necessary to make the conditional sale contract a valid lien on the automobile. The precise point made is that Thomas was not, in fact, known to the notary to be the identical person named in and who executed the instrument. There is no claim that the instrument was not, in fact, signed and acknowledged by Thomas, or that the certificate on its face was not sufficient to entitle the instrument to record. The contention amounts to this: That, where an instrument of record is properly signed, and in fact acknowledged by the person executing it, and the certificate is sufficient on its face to entitle the instrument to record, the record will not impart constructive notice, if it be shown that the officer taking the acknowledgment did not personally know the one acknowledging it to be the identical person named in and who executed the instru-. ment. We have not been cited to any authorities so holding. Cases where the instrument was not, in fact, acknowledged at all, or where the acknowledgment was by some person impersonating another, either involving the question of whether notice was imparted by the record or the liability of a notary for the damages caused by his false or negligently made certificate, are not in point. It is said that, according to the weight of authority, where the certificate of acknowledgment is regular on its face, the record of the instrument will impart constructive notice, notwithstanding a hidden or latent defect in the acknowledgment; and the rule many times announced by this court, that, if it be shown that the officer taking the acknowledgment was disqualified by interest, the record will not impart notice, is recognized as an exception. 1 Corpus Juris 773; *Farmer v. Ames-Farmer Can. Co.*, 190 Iowa 1259, and cases there cited. See, also, *Bartlett v. Bolte*, 193 Iowa 1063. This case is not within either the spirit or the letter of the rule of these cases, nor within any recognized exception to the general doctrine.

There is no defect in the acknowledgment, so far as Thomas is concerned. In the absence of any claim or showing to the contrary, it must be assumed that he is the person named in the instrument, and that he signed and acknowledged it, as the certificate states. This being the fact, the objection goes only to the proposition that the notary was disqualified to take the acknowledgment because of his lack of certain knowledge of the truthfulness of his statement. So far as his knowledge went, it was correct. He knew the person acknowledging the instrument as Roy Thomas; and he was in fact Roy Thomas. We are by no means prepared to hold that the validity of the record of an instrument otherwise unquestionably entitled to record depends upon the mere degree or certainty of the acknowledging officer's knowledge of the identity of the one whose acknowledgment is taken, when that identity is not questioned.

It is urged that the measure of plaintiff's damages is not the unpaid balance of the purchase price, but the value of the car. This question was considered at length, and decided against the appellant in the former case between the parties, first above cited. The same thing is true of the contention that it was error to allow a recovery of 8 per cent interest.

An instruction is criticized because it is said that it assumed that Thomas had done something with the car that might have had the effect of depriving plaintiff of its lien. The instruction directed the jury to take into consideration all the facts and circumstances showing or tending to show what, if anything, he did do to convert the car to his own use, and whether what was done by him had the effect of depriving the plaintiff of its lien. The plain thought of the paragraph is that it is only in case the jury found that Thomas did anything tending to show a conversion, that what he did is to be so considered. The jury could not have been misled.

**5. TRIAL: instructions: nonassumption of fact.**

Objection is made to another instruction, on the ground that it permitted the jury to find that, if proofs of loss were furnished within the time required by the policy, this might be considered upon the question whether plaintiff had complied with the policy provision requiring immediate notice of any event that

**6. TRIAL: instructions: prejudicial error negatived.**

might be a basis of a claim against the company. The instruction cannot, in this respect, be approved; but, in view of the direction in the same instruction that a reasonably prompt notice after the plaintiff discovered the wrongful conversion would be a compliance with the provision of the policy requiring such notice, and the undisputed testimony that all the facts within the knowledge of the plaintiff were given, and proofs of loss furnished, to a representative of the company, not later than a week after such knowledge was acquired, we are of the opinion that it was not prejudicial. Since we find no prejudicial error, the judgment is—*Affirmed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.