## CARL W. COVLIN v. ANTON VOLOCHENKO. OSBORNE-Mc-MILLAN ELEVATOR COMPANY, a Corporation, Garnishee-Appellant and PHOENIX LUMBER COMPANY, a Corporation, et al., Respondents.

### (204 N. W. 892.)

**Interpleader — on findings that rights of parties rest in action for conversion, court may dismiss as to interpleader parties without prejudice to their rights against tort-feasors.**

1. Where in the trial of an action of interpleader, the Court finds that the rights of the parties rest in an action for conversion, it may dismiss such action as to the interpleaded parties without prejudice to their rights against a tort feasor.

**Warehouseman — reasonable time for warehouseman to ascertain validity of adverse claim or to compel claimants to interplead question of fact.**

2. Section 18, chapter 250, Session Laws of 1917, excusing a warehouseman from liability for refusing to deliver stored grain to a mortgagee on demand until the warehouseman has had a reasonable time in which to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead, construed and Held, that the question of what is a reasonable time under the provisions of said section is a question of fact to be determined from the evidence in each particular case.

**Warehouseman — delay by garnishee warehouseman before interpleading claimants held unreasonable.**

3. The evidence in the case at bar examined and, for reasons stated in the opinion, it is held that the garnishee warehouseman did not bring legal proceedings to interplead the claimants within a reasonable time after demand. Held, further, that conversion took place, under such circumstances, on the date of demand.

Opinion filed June 2, 1925. Rehearing denied July 15, 1925.

Appeal and Error, 4 C. J. § 2541 p. 649n. 36. Interpleader, 33 C. J. § 18 p. 435 n. 2; 33 C. J. § 57 p. 464 n. 37 New. Warehousemen, 40 Cyc. p. 445 n. 81, 82, 87.

Appeal from the District Court of McLean County, *Jansonius, J.*

Action by garnishee to interplead adverse claimants to stored grain.

From a judgment dismissing proceedings as to the interpleaded parties, without prejudice, the garnishee appeals.

Modified and affirmed.

*McCulloch & McCulloch,* for plaintiff.

*F. B. Lambert,* for appellant.

Admissions by an agent not made at the time of the delivery of the grain are not admissible. Blackorby v. Gunther, 34 N. D. 248, 158 N. W. 354.

When conflicting claims are made to money or property in his custody or when it comes to his knowledge or notice that any person has claims or right thereto adverse to the bailor or whenever the money or property attached is by garnishment or other process, the statute offers the bailee a remedy by which he may be relieved from liability. McLaughlin v. Dodge El. Co. 43 N. D. 231.

The character of an action as brought must be determined by the complaint. Cook v. Northern Pac. R. Co. 22 N. D. 266, 133 N. W. 303.

Under the principal that the plaintiff must recover upon the cause of action set forth in his pleading, if at all, the complaint in an action for conversion cannot entitle the plaintiff to any relief where all the evidence points to a sale and not a bailment. Fishback v. Garrison, 102 Pac. 895.

A complaint can not be amended so as to set up a new cause of action even though they are both on contract. Burke v. Welo, 190 N. W. 269.

The receipt is a symbol of ownership of the goods covered by it. And when the statute speaks of a warehouseman's negotiable receipt the word 'negotiable' is not used in the sense in which it is applied to bills of exchange or promissory notes, but only as indicating that in the passage of warehouse receipts through the channels of commerce the law regards the property which they describe as following them, and gives to their regular transfer by indorsement the effect of a manual delivery of the things specified in them. Vannett v. Reilly, 173 N. W. 467.

The rights of the mortgagee of personal property are not lost because the mortgagor has placed the goods in a warehouse and transferred the receipt to a third party for value. . . . But the rights

of the transferee are subject to the mortgage, if it was properly filed or recorded at the time of the transfer. 27 R. C. L. 974.

A holder of warehouse receipts takes no better title than if the goods were held by him. Their negotiability only serves to cut off any defense the warehouseman may have. First Nat. Bank v. Boyce, 78 Ky. 42, 39 Am. St. Rep. 198.

An indorsement in blank followed by an unconditional delivery by the holder of a warehouse receipt for grain stored in a public elevator, to a creditor for valuable consideration, passes title to the grain represented by the ticket, and is a transfer of the title and a sale of the grain to such creditor. St. Anthony & D. El. Co. v. Dawson, 20 N. D. 18, 126 N. W. 1013.

One who takes warehouse receipts to assume the risk of the warehouseman issuing receipts for goods on which a landlord has a prior lien. Am. Pig Iron Storage Warrant Co. v. Sinnemahoning Iron & Coal Co. 205 Pa. 403, 54 Atl. 1047.

Warehouseman must deliver to true owner even though receipt still out and having done so this is a defense. 40 Cyc. 448.

Assignment of a note to enable the assignee to sue thereon must be for the whole and not for a part only of the sum mentioned in the note. Martin v. Hayes, 44 N. C. 423; Lindsay v. Price, 33 Tex. 280.

An assignment of a part of a note does not pass the legal title or rights of action to the assignee. Elledge v. Straughan, 41 Ky. 81; Bank v. Trimble, 45 Ky. 499; Douglas v. Wilkson, 6 Wend 639.

*Campbell & Funke,* for respondent.

Where a bill of interpleader is filed, the better practice is first to determine whether such bill will lie; if it will not it is useless to go further, and complainant's bill may be dismissed. 33 C. J. 484.

BERRY, District Judge. This action was brought by Carl W. Covlin, as plaintiff, against Anton Volochenko, defendant, and at the same time the Osborne McMillan Elevator Company was garnished. Anton Volochenko defaulted in the main action and the Garnishee, Osborne-McMillan Elevator Company, served and filed a disclosure in garnishment, dated December 31, 1920, in which it admitted that on or about the 9th day of September, 1920, it received from the defendant, Anton Volochenko, seventy-nine bushels of No. 4 mixed Durum wheat, and

962 bushels net of No. 1 mixed Durum wheat, and issued negotiable storage tickets to Anton Volochenko, payable to the order of Carl Covlin and Anton Volochenko. That Anton Volochenko endorsed and delivered the storage tickets to the Dogden State Bank for a loan of about $800.00. That the Phoenix Lumber Company, of McClusky, North Dakota, claims to have some interest in the storage tickets. The First State Bank of Kief, a corporation, claims a first mortgage upon the grain for the sum of $339.35, with interest, and that one W. A. Bokovoy, of Kief, North Dakota, has filed and claims a thresher's lien on the same grain for the sum of $410.00, and interest. Willie Kostenko, F. J. Funke and John Volochenko, and others, claim to have liens upon said grain. And the garnishee's disclosure further states, using the language employed by the garnishee: "That this affiant will and is now about to notify all of the parties above named as having a claim in or to the storage tickets above described, or the grain supposed to be represented thereby, by registered mail in accordance with the statute in such case made and provided, of the pendency of this garnishment action, and asking them to come into court and assert whatever title they have or claim to have to the said storage tickets or the grain represented thereby, and the garnishee expresses its willingness to have the whole matter of the title to this grain and to these tickets, disposed of in this action, and prays that all of the parties mentioned appear in said action and finally dispose of the same, providing only that whoever now has the actual tickets in their possession, bring them into court and have their rights thereto determined; that under these circumstances the said garnishee is willing to abide by the decision of the court in the matter and pay for the grain represented in said tickets at the regular market price on the date that the tickets are surrendered, to any or all persons which the order of the court may direct, and in accordance with the amounts due, and preferences given by the order of the court, or, if the court so directs, to pay the full value of the grain represented by said tickets to the clerk of court or such other depository as the court may name, at any time that the tickets are returned to it, but in case said tickets cannot be obtained and returned into court so as to be turned over to the garnishee when they are paid, the said garnishee prays:

1. That the court order that each and everyone of the claimants to

said tickets, or the grain supposed to be represented thereby, to-wit: Carl Covlin, Kildeer, North Dakota, Anton Volochenko, Dogden, North Dakota; McCulloch & McCulloch, Washburn, North Dakota; Dogden State Bank, Dogden, North Dakota, Phoenix Lumber Company, McClusky, North Dakota, First State Bank of Kief, North Dakota, W. A. Bokovoy, Kief, North Dakota, Willie Kostenko, Dogden, North Dakota, F. J. Funke, Minot, North Dakota, John Volochenko, Dogden, North Dakota, be interpleaded as defendants to this garnishee action, and that notice thereof setting forth the facts with a copy of such order, in such form as the court may direct to be served upon them and each of them, and that the court order that the storage tickets hereinbefore described be brought into court and abide the decision of the court in this action as to the ownership; that this garnishee be authorized to pay for said grain to whomever the court may decide to be entitled thereto, after the action is finally disposed of, or that the court order that the said storage tickets be turned over to the said garnishee and the proceeds thereof turned into court to abide the order of the court, and in any event that the garnishee be relieved from any and all liability to the parties to this action, or either of them, or to any of the claimants hereinbefore mentioned; further, that .payment of said storage tickets in accordance with their terms and the provisions of the statutes of this state, and that when said tickets are paid, that the clerk or such other person to whom the court orders payment to be made, shall give this garnishee a receipt therefor, as well as a return of the tickets, which receipt and the cancelled storage tickets shall act as a complete discharge from all liability to any and all parties in this action.

2. That the service of such notice on the claimants above named, be made as provided in § 7582 of the Compiled Laws of 1913, and be made by the plaintiff herein, this in addition to the notice of the pendency of this action, which has or will be this day sent by registered letters, to each and everyone of the claimants.

3. That this garnishment be dismissed, and that in case the position of the garnishee is questioned in any way and this disclosure put in issue that the garnishee have judgment for its costs and disbursements herein."

The garnishee proceeded no further to have said adverse claimants

interpleaded, but served its proposed notice of pendency of action upon the adverse claimants.

The First State Bank of Kief made a motion before the district court setting forth all of the facts and secured an order from the judge thereof, ordering said adverse claimants to be interpleaded as defendants to the garnishee action and directing that notice thereof, setting forth the facts upon which the order was made to be served upon the claimants so interpleaded, with a copy of the order, such notice to be subscribed by the attorneys for the First State Bank of Kief, and that the adverse claimants be given thirty days in which to plead, setting forth their adverse claims; and that in case of default, judgment was to be entered against such defaulting adverse claimants, declaring them to have no interest in the grain or storage tickets.

Pursuant to such order, the First State Bank of Kief filed a pleading called a complaint in intervention, setting forth its chattel mortgage and note, claiming that the same was a first lien upon the grain involved in the action.

W. A. Bokovoy filed a pleading called a complaint in intervention in which he sets forth his claim, the same being a note and chattel mortgage, claiming that the same was a second lien upon the grain involved in this action.

The Dogden State Bank filed a pleading denominated "Answer to Complaint of First State Bank of Kief," in which it denies the allegations in the pleading of the First State Bank of Kief, and set forth its claims, wherein it contends that it had purchased the negotiable storage tickets from Anton Volochenko for a valuable consideration.

All of the adverse claimants defaulted except the Dogden State Bank, the First State Bank of Kief, and W. A. Bokovoy.

This case came on for trial on the 21st day of August, 1923, the Dogden State Bank having been served with a subpoena duces tecum, and required to produce in court under such subpoena the storage tickets mentioned in its pleadings. The garnishee, Osborne-McMillan Elevator Company, did not "pay or deliver to the officer, or the clerk, such indebtedness or property and have a receipt therefor."

Evidence was received on the trial on behalf of the State Bank of Kief in support of its claim under its note and mortgage. Evidence was received on behalf of W. A. Bokovoy in support of his claim to

the wheat under his note and mortgage. Evidence was received on behalf of the Dogden State Bank in support of its rights under the negotiable storage tickets. After the evidence was received the court made findings of fact, conclusions of law, and order for judgment, in which the court found among other things; "that it was not a proper case for deposit or interpleader as against the defendants, W. A. Bokovoy, Dogden State Bank and First State Bank of Kief, that there was no proper or sufficient deposit or interpleader, in fact no deposit whatever; and that the said interpleader should be dismissed and the said proceedings dismissed as against the defendants First State Bank of Kief and W. A. Bokovoy, and no interpleader or deposits permitted or allowed against said defendants, and that said defendants be allowed and permitted without prejudice to have and take such proper proceedings as deemed necessary and advisable to recover their rights against the garnishee."

The court also made findings of fact and conclusions of law based upon the evidence introduced in the case, and in view of the fact that the garnishee has appealed from the judgment of the lower court and predicates error upon findings of fact numbers seven and eight, and conclusions of law numbers two and six, we shall later in the opinion dispose of such assignments of error.

The appellant contends that the trial court erred in dismissing this action as to the First State Bank of Kief, W. A. Bokovoy and Dogden State Bank without prejudice to their rights to sue the elevator company for the conversion of the grain, and predicates its main assignment of error upon such ruling of the court.

The trial court upon all of the facts and proceedings in the case evidently came to the conclusion that it would be doing the mortgagees a great injustice to decree a foreclosure of their mortgage in August, 1923, when the price of the grain covered by the mortgages was worth less than half of its price on September 14th, 1920, when due demand was made for the mortgaged grain by W. A. Bokovoy, one of the mortgagees. Evidently it did not appeal to the conscience of the court to permit the elevator company to absolve itself from liability to the mortgagees for the conversion of grain on September 14th, 1920, the value of which was $2.24 a bushel, by the delivery of substituted grain in 1923 of less than half that value. The ruling of the court was

proper. Where the rights of the parties rest in conversion the court may dismiss an interpleader action and permit the parties to resort to such remedy.

Section 18, chapter 250, Session Laws of 1917, reads as follows:

"Diverse Claimants. If some one other than the depositor or person claiming under him has a claim to the title or possession of the goods, and the warehouseman has information of such claim, the warehouseman shall be excused from liability for refusing to deliver the goods, either to the depositor or person claiming under him or to the adverse claimant, until the warehouseman has had a reasonable time to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead."

When a mortgagee demands stored grain of a warehouseman for the purpose of foreclosure, the warehouseman should be allowed time to investigate before delivering the grain to the mortgagee, and if he is in doubt as to the validity of the adverse claim he may bring legal proceedings to compel all claimants to interplead. Comp. Laws, §§ 7412 and 7414. See More v. Western Grain Co. 31 N. D. quoting from pages 381 and 382, 153 N. W. 979:

"We realize that under the peculiar statutory provisions of some states the remedy of interpleader has been greatly enlarged so as to include a number of causes not included in the old equitable action. But the legislature in this state has wisely limited the class of actions in which interpleader may be had to those involving a specific debt arising from contract or the recovery of specific real or personal property. It would be a manifest injustice to permit an interpleader in an action for a tort. Worthless persons could be interpleaded, and in this manner the right of the plaintiff to recover damages be defeated. If an elevator company would be permitted to interplead as a party defendant, the person from whom it received or purchased grain, it could never be held liable for conversion. An action of tort is founded upon some act of the tort feasor amounting to a breach of legal duty owing by the wrongdoer to the injured party. And the whole theory of the remedy of interpleader is contrary to its use in actions for damages for a tort. As was said by Lord Chancellor Eldon in Slingby v. Boulton, 1 Ves. & B. 334, 35 Eng. Reprint, 130: 'A person cannot file a

bill of interpleader who is obliged to put his case upon this, that as to one of the defendants he is a wrongdoer.'"

The legislature has not fixed an arbitrary number of days in which to make such investigation, but has provided that the warehouseman may have a "reasonable time." In any case where this question arises it is a question of fact to be determined from the evidence in the case.

In the case at bar, W. A. Bokovoy, one of the mortgagees, demanded the grain on September 14, 1920, and the elevator company did not initiate interpleader proceedings until December 31, following. We have examined the evidence and find that the time used, to-wit: three months and sixteen days is clearly an unreasonable length of time in which to make the investigation in this case.

Furthermore, where the warehouseman takes more than a reasonable time in which to make such investigation, the immunity from liability under § 18, supra, is not afforded him. The immunity from liability afforded the warehouseman under said section is for a useful and valuable purpose and for his benefit only, namely to investigate and either deliver the grain or bring the contemplated proceedings. Under such circumstances conversion takes place on the date of demand. A second demand is not necessary. This court has so held in the case of Cunningham v. Lahr Motor Sales Co. 50 N. D. 846, 198 N. W. 347.

"Where a warehouseman, availing himself of his right under § 18, chap. 250, of the Laws of 1917, refuses to deliver goods to the true owner, upon demand, a second demand is not a prerequisite of an action to recover damages for conversion."

"We are clearly of the opinion that it was not the intention of the Legislature, in enacting § 18 of the Warehouse Receipts Act (chapter 250 of the Laws of 1917) to change these fundamental rules of liability further than to excuse a warehouseman for refusing to deliver goods to which an adverse claim is made during such reasonable time as may be required to ascertain the validity of the claim or to institute an action to compel the claimants to litigate the claim. If the warehouseman elects, under § 18, to refrain from delivering to a claimant upon demand, it assumes the affirmative obligation of inquiry as to the validity of the claim made or the obligation of instituting legal proceedings in the nature of interpleader. If it should develop that the plaintiff is the owner, that following the demand and refusal the

defendant has made no investigation or inquiry, or that a reasonable time after the first demand has elapsed, and that the defendant has neither instituted legal proceedings nor complied with the plaintiff's demand nor offered to do so, it must in our opinion be held that its continued possession is an act of dominion in denial of the plaintiff's right."

The warehouseman may deliver the property in dispute into court and receive a receipt therefor, and be discharged from further liability to anyone for the grain. This interpleader action or interpleader and deposit must be instituted within a reasonable time after demand for the grain by a party entitled thereto, otherwise the rights of the parties rest in an action for conversion.

In the case of Sand v. St. Anthony & D. Elevator Co. 49 N. D. 502, 191 N. W. 955, the warehouseman failed to comply with § 7594 of the Compiled Laws. The court in that case also held that the refusal of the defendant elevator company to comply with the demand of the mortgagee for the possession of the stored grain for the purpose of foreclosure prima facie established a conversion. The demand was made by the plaintiff, Sand, on January 29th, 1921, and the date of the attempted interpleader proceeding instituted by the warehouseman was July 29, 1921, when it ineffectually attempted to interplead claimants and make a deposit in court.

The main difficulty in the Sand case was the fact that the defendant elevator company took six months to bring its interpleader action, after demand, and under section 18, supra, it was not excused from complying with the demand of plaintiff Sand, because it took more than a reasonable time and thereby became a wrongdoer or tort feasor.

In the case of McLaughlin v. Dodge Elevator Co. 43 N. D. 231, 174 N. W. 871, involving a somewhat similar situation, the plaintiff made his demand on September 15th, 1915, and another demand on January 27th, 1916. The attempted interpleader and deposit in court was not initiated until the defendant elevator company attempted to answer in a suit brought against it for conversion on March 13th, 1916, more than six months after the first demand, and more than fifty-six days after the second demand. So it is apparent that the elevator company was a tort-feasor before it attempted to invoke the remedy of interpleader, and was therefore not immune from liability under the pro-

visions of § 18, supra, having taken more than a reasonable time after demand before bringing its action in interpleader.

In these cases, and the case at bar, the elevator companies have undertaken, ineffectually to invoke the remedy of interpleader. Interpleader actions of this type invoke the equitable powers of the court, and it is a well established doctrine that the party seeking to invoke the equitable powers of the court must come into court on time with clean hands. When the elevator company sleeps on its rights and takes more than a reasonable length of time to investigate after demand, it comes into a court of equity too late and it does not come with clean hands, it comes as a wrongdoer.

If the elevator company delays action until it becomes a wrongdoer, before resorting to the remedy of interpleader, the defect is fundamental and cannot be remedied by the court.

In view of the fact that the interpleaded parties must bring an action, if they wish to establish and enforce their rights, no harm can be done by modifying or expunging such findings of fact and conclusions of law as are complained of by the appellant, and leaving only such findings and conclusions as are clearly sustained by the evidence. Accordingly finding of fact number seven is modified to read as follows:

"That on September 14, 1920, the said grain above described, being then and there in the possession, custody and control of the garnishee, the said W. A. Bokovoy under and by virtue of his mortgage and the said First State Bank of Kief under and by virtue of its mortgage made and caused to be made upon said garnishee a demand for the grain covered by their mortgage, or in the alternative, grain of like kind and grade, or for the value thereof, which demand was then and there refused by the garnishee."

The evidence clearly shows that Mr. W. A. Bokovoy, made a demand for the grain on September 14th, 1920. There was no proof of value of the grain. There was an offer to prove that No. 1 mixed Durum was worth $2.24 per bushel and No. 4 was worth $2.04, but the court sustained an objection to that testimony.

Finding of fact number eight is modified to read as follows: "That on or about the 11th day of September, 1920, the defendant, Anton Volochenko, sold to the Dogden State Bank his interest in the storage tickets; that said storage tickets are now, and at all times since the de-

livery thereof by the said Anton Volochenko to the Dogden State Bank, have been in the possession of the Dogden State Bank, and were by the said Dogden State Bank produced into court pursuant to the demand and notice to produce, and a subpoena duces tecum issued out of this court, and are now filed herein as a part of the exhibits in this case, and that the said garnishee has not deposited into court either or any of the said storage tickets, or of said grain or any part thereof, or any money or moneys, and has at no time offered to do so, except in the manner and form set forth in its affidavit and answer of garnishee of date of December 31st, 1920.

That the garnishee herein filed its disclosure in this court, wherein and whereby it denied liability as garnishee in this action by reason of the fact that it had issued and delivered upon receipt of the said grain, as herein described, its negotiable storage tickets, and that it should not be held liable as garnishee by reason of said fact."

Conclusion of law number two is hereby modified to read as follows: "That the Dogden State Bank bought all of the right, title and interest of the said Anton Volochenko in and to the storage tickets described in the findings of fact herein and is entitled to the judgment of this court for the redelivery to it of said storage tickets, and further judgment for its costs and disbursements in the action to be taxed by the clerk of the district court against the defendants, First State Bank of Kief and W. A. Bokovoy, and dismissing said action as to the Dogden State Bank without prejudice to any further action which may be brought by the Dogden State Bank against the Osborne McMillan Elevator Company, Garnishee herein." (The First State Bank of Kief and W. A. Bokovoy not having appealed, the judgment for costs against them is not disturbed.)

Conclusion of law number six is not modified, but is allowed to stand as it is, for the reason that the same is justified by the law, as predicated upon the facts of this case.

The foregoing considerations are controlling on this appeal and it will not be necessary to consider any others.

This court having come to the conclusion that the trial court was correct in its decision, the judgment is hereby affirmed. However, we direct that the findings of fact and conclusions of law made by the lower court be modified by a re-entry of the judgment in the lower

court to conform to the findings of fact and conclusions of law of the trial court, as modified by this court. Each party is to pay its own costs on this appeal.

CHRISTIANSON, Ch. J., and JOHNSON, BIRDZELL, and BURKE, JJ., concur.

NUESSLE, J., being disqualified, did not participate; BERRY, Dist. J., sitting in his place.